# HILLSBOROUGH,

## JANUARY TERM, A. D. 1858.

### State v. Flynn.

Evidence obtained by means of a search-warrant is not inadmissible, either upon the ground that it is in the nature of admissions made under duress, or that it is evidence which the defendant has been compelled to furnish against himself, or on the ground that the evidence has been unfairly or illegally obtained, even if it appears that the search-warrant was illegally issued.

The respondent was indicted for keeping for sale a large quantity — to wit, ten gallons — of intoxicating liquor, not being an agent for the sale of such liquor, and the liquor not being domestic wine, &c., contrary to the statute, &c.

Upon the general issue the State introduced evidence tending to show that A. P. Colby, an assistant marshal of the city of Manchester, acting under a warrant issued by the police court of said city, which was not produced or offered as evidence, went with assistants to the place occupied by the respondent, on Elm street, in Manchester, and there made search for spirituous liquors.

The respondent's counsel then objected to the admission of any evidence of the facts ascertained upon such search, upon the ground that the statute for the suppression of intemperance, so far as it purports to authorize a search for spirituous liquors, particularly the fourth section of the statute, is repugnant to the constitution of the United States and of this State, and any evidence obtained under such unconstitutional enactment is in-

admissible, because it is in the nature of admissions made by the respondent under duress, and the respondent is thus compelled to furnish evidence against himself; but the court admitted the evidence.

The jury having found a verdict against the respondent, his counsel move for a new trial, by reason of said decision.

*Morrison*, *Fitch*, and *Stanley*, for the respondent.

I. The act of 1855 for the suppression of intemperance is in conflict with the constitution of the State and of the United States. This point was fully argued by the counsel on both sides, but, as this point did not become material to the decision, this part of the argument is not reported.

II. By the 15th article of the bill of rights of this State it is declared that " no subject shall be compelled to accuse or furnish evidence against himself." The effect of the act of 1855 is to do this. It compels the individual against whom the complaint is made to submit to a search of his premises for the purpose of procuring evidence which is rightfully his, and subject to his sole control, and which he is not to be compelled to furnish or yield to others, to be used against himself, and which he has the right to keep back and withhold, or to resist the sworn officers of the law in the execution of a precept, and then allows the evidence obtained upon such search to be given against him.

If the legislature may do this, why may they not take the next step, and enact a law allowing a man to be arrested upon the belief that he has violated this law, and to be kept in confinement until he will himself disclose whether he has violated it or not, and then allow the admissions obtained in such a manner to be used against him in the trial ? This is but the next step, and if the first may be taken, why may not the second ? If the first may be taken, it is difficult to see what the end may be.

*Stevens*, Solicitor, for the State.

It is contended by the respondent that the act of 1855, " for the suppression of intemperance," is unconstitutional, inasmuch

as it conflicts with the 15th article of the bill of rights, which provides that " no subject shall be compelled to accuse or furnish evidence against himself." This position is regarded as untenable. We are at a loss to see in what way the production of the evidence, the facts obtained on the search, can be regarded as an admission or confession on the part of the respondent, or as evidence furnished by him.

The discovery or production of the evidence is no more an admission by the accused than it is a denial of the offence charged. It may be an ingenious figure of speech to designate such evidence as " in the nature of admissions made by the respondent under duress," or as compulsory testimony " furnished by himself," but it seems rather a fanciful application of language.

Admissions or confessions are made by the accused himself. An admission is the concession, by the party accused, of the existence of certain facts. It is a voluntary act, by which he acknowledges as true the fact in dispute. A confession is the voluntary declaration, made by a person who has committed a crime or misdemeanor, to another, of the agency or participation he had in the same. Bouv. Law Dict., V, Admission, Confession. Admissions or confessions of a party, or the furnishing of evidence by a party, necessarily implies and includes some volition on his part, some act of the mind, not mere silence, passiveness, or negation. The person may be under duress, or his mind constrained by hope, fear, or other motive, and then the confession is not in law voluntary or admissible. But what analogy is there to the case of evidence obtained by a search ? There is no restraint upon his person, and no control over his mind. It is urged he must obey the law ; that he must not resist the officer. That is a general law, and has no further application to him than to every other person. His neglect to resist the officer " furnishes" no evidence against him, unless it is put upon the ground that it exposes the instruments of his guilt. It cannot be seriously contended, that because the accused is prevented from concealing or destroying the instruments or indicia of his offence, because he is so closely pursued that he finds no time or oppor-

tunity to remove the strongest evidences of his guilt, — the weapon with which he struck, the bloody garment, the spoil of his theft or robbery, the tools or instruments of counterfeiting, — or that they are taken from him by force, or discovered by search, and produced in evidence, he is thereby admitting his guilt, or furnishing evidence against himself. Such a construction placed upon the independent acts of others is an entire perversion of the language of the constitution, alike from its legal sense and its general acceptation. The evidence, which is admitted, and which was held, in *State* v. *McGlynn*, 34 N. H. 422, admissible at common law, is obtained irrespective of his acts or admissions, without his aid, and in his absence from the place of search.

No one questions the right to search even a dwelling-house for stolen property, or the admissibility of the facts obtained upon such search to prove the guilt of the accused, or the right of the government to offer in evidence the discovery, in the possession of the accused, of the implements of counterfeiting, when thus found, in order to show the criminal intent of the accused. Wherein does this case differ from those ? Such evidence has never been excepted to as " admissions" of the respondent, or as " furnished by him." They are facts obtained in the absence of any aid or information from him.

The construction contended for by the respondent would work an entire revolution in this branch of criminal evidence, as it would exclude all evidence of facts obtained under the authority of a search-warrant.

Upon this point in the case the respondent has failed to produce an authority in support of his position. It is fair to presume none can be found.

In support of the position of the government, that the evidence was competent, we cite the cases of *Leggatt* v. *Tallervey*, 14 East 302 ; *Jordan* v. *Lewis, ibid.*, 306, note ; and *Commonwealth* v. *Dana*, 2 Met. 329. In the first two cases cited, evidence was held competent, though obtained in violation of law. In the latter case the objection was made to the evidence upon

the same ground taken by the respondent here. It was there urged that the seizure of the articles — lottery tickets, and materials for a lottery — for the purpose of using them against the defendant, was virtually compelling him to furnish evidence against himself, in violation of an article of the constitution similar to ours. The court say, " The right of search and seizure does not depend on the question whether the papers or property seized were intended to be used against the offender or not." In cases of the seizure of stolen goods on searchwarrants, the goods have in almost all cases been given in evidence, and no one, I apprehend, ever supposed that a seizure for that purpose was a violation of the declaration of rights ; and in this respect there is no difference " between the seizure of stolen goods and the seizure of lottery tickets."

In the case at bar there was no seizure, as the section under which the warrant issued provides for none, and therefore less reason, if possible, for designating the evidence obtained a compulsory " admission" of the respondent, than there would have been if the property had been actually seized, taken from his possession, and produced in court.

The court go on to say, " There is another conclusive answer to all the objections. Admitting that the lottery tickets and materials were illegally seized, still there is no legal objection to the admission of them in evidence. If the search-warrant was illegal, or the officer serving it exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done ; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. Where papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully, nor would they form a collateral issue to determine that question ;" and then recognizing the authority cited above from 14th East as sound law, the court conclude, " on either of the grounds, therefore, we are of the opinion that the evidence on the part of the commonwealth was rightfully admitted."

State *v.* Flynn.

If this opinion of the court in Massachusetts is recognized as sound law, its authority fully meets and answers the position of the respondent.

BELL, J. The decision of this case does not require that we should consider the question whether the fourth section of the statute of 1855, for the suppression of intemperance, is consistent with the provisions of the constitution of the United States or of this State.

The case furnishes us no opportunity for considering any objection which might be supposed to exist from failure to comply with any of the requirements of the constitution or laws relative to the manner of issuing the warrant in this instance. All that appears is, that a search was made under a warrant, upon which certain facts were seen or ascertained by the witnesses.

The question whether evidence obtained by means of a search-warrant is to be received, was raised upon a former indictment, *State* v. *Glynn*, 34 N. H. 422; and it was there held, that the officers who had made a search of the respondent's premises, might be admitted as witnesses, without proof of due legal proceedings, according to the provisions of the act referred to ; that their evidence was competent on general principles, since the witness is no legal party to the prosecution, is not entitled to any thing upon a conviction, and is not liable for costs ; that he cannot in any event either gain or lose by the prosecution. And the provision of the section before referred to, that they may be witnesses, was introduced *ex abundanti cautela*, and was wholly unnecessary.

This decision must be regarded as settling here one point in this case, namely, that the knowledge ordinarily acquired in consequence of a search-warrant is admissible at common law in evidence, and this notwithstanding the object of the search, or at least one great object of the search, may be that of obtaining evidence.

That we do not find in any of the books of evidence any rule excluding the evidence of parties concerned in a search, is very

strong evidence of the correctness of this decision. The practice, too, of receiving such evidence is believed to be uniform.

The objection made in this case does not go so far as to insist that all evidence obtained under a search-warrant is incompetent. Its ground is, rather, that information obtained by means of a search-warrant, in a case not authorized by the constitution, is not competent to be given in evidence, because it has been obtained by compulsion from the defendant himself, in violation of that clause of the constitution which provides that no person shall be compelled to furnish evidence against himself. Bill of Rights, Art. 15.

If the objection were admitted to be well founded in fact in this case, we are unable to assent to it. Evidence is often procured in modes and by means which are not justified by the rules of fair dealing, by good morals, nor by law; but we are not aware that it is ever rejected for that cause, except in a single case, where a party accused has been induced to make statements or admissions, by threats or by promises of favor, made by the prosecutor, or officer having the prisoner in custody, or by a magistrate, or by a private person in their presence. Greenl. Ev., sec. 222.

But where evidence is extorted from unwilling witnesses by artful and unfair cross-examination; where parties have been induced to disclose their plans to those who have wormed themselves into their confidence, by assuming to act as confederates; where clergymen have availed themselves of their sacred office, to visit the prisoner's cell and urge him to confess a crime, which must be punished by his death; or where eaves-dropping of the meanest character has been resorted to, the testimony is always received, though juries are cautioned to examine it carefully, and to place little reliance upon it, except where it is sustained by other proof. *Rex* v. *Simons*, 6 C. & P. 540.

Where a party has obtained admission to the premises of another by fraud, or unauthorized force and violence, and has thus unfairly and illegally acquired information injurious to the owner personally, or to his interests, which could not have been other-

State *v.* Flynn.

wise obtained, his evidence would not, for that cause, be rejected. If such entrance was obtained, or such information was procured, by means of a search-warrant, which was entirely void for any cause, the evidence so obtained could hardly stand on less favorable ground than that obtained without any pretence of legal right.

It would be vain to attempt to enumerate the cases where officers of justice force themselves into the houses of others, and yet are allowed to testify what they see. Arrests are made in gambling places and other disorderly places, and the police break into houses, where an outcry indicates some gross disturbance or breach of the peace, and so of many other cases; and we are not aware that it has been questioned that they are competent witnesses to testify what they saw on those occasions, nor do we recollect a case where it has been made a question whether they were acting within the scope of their powers, as a test of the admissibility of their evidence.

It seems to us an unfounded idea that the discoveries made by the officers and their assistants, in the execution of process, whether legal or illegal, or where they intrude upon a man's privacy without any legal warrant, are of the nature of admissions made under duress, or that it is evidence furnished by the party himself upon compulsion. The information thus acquired is not the admission of the party, nor evidence given by him, in any sense. The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not disclose the facts which he is desirous to conceal. By force or fraud access is gained to them, and they are examined, to see what evidence they bear. That evidence is their's, not their owners. If a party should have the power to keep out of sight, or out of reach, persons who can give evidence of facts he desires to suppress, and he attempts to do that, but is defeated by force or cunning, the testimony given by such witnesses is not his testimony, nor evidence which he has been compelled to furnish against himself. It is their own. It does not seem to us possible to establish a sound distinction between

that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means. The evidence is in no sense his.

In the cases of *Leggatt* v. *Tallervey*, 14 East 302, and *Jordan* v. *Lewis*, 14 East 306, note, both of which are cited in the able argument of the counsel for the State, it was distinctly held that evidence, pertinent to the issue, and otherwise free from objection, will not be rejected because it has been either illegally or improperly obtained. And in the *Commonwealth* v. *Dana*, 2 Met. 329, cited by the same counsel, both the questions before stated were distinctly raised and decided in the Supreme Court of Massachusetts. It was a case of a search-warrant for the seizure of lottery tickets illegally kept for sale. The provision of the constitution of Massachusetts which forbids that a party should be compelled to furnish evidence against himself, is very nearly in the words of our own constitution. The case was strongly contested and ably argued, on both the points before us here, and it was held by the court that the evidence obtained by means of a search-warrant, however illegally issued, is in no respect evidence furnished by the party himself, within the meaning of the constitution; and it was also held, upon the authority of the two cases in East, that the evidence would not be rejected because it was obtained by fraud, or a violation of law, if it was otherwise competent and pertinent to the issue.

These decisions seem to us to be sound and correct, and they satisfy us of the correctness of our conclusions, before stated.

The objections being overruled, there must be

*Judgment on the verdict.*