Hillsborough-southern judicial district
No. 93-329

# THE STATE OF NEW HAMPSHIRE

v.

## RAFAEL CANELO a/k/a RAFAEL CANELO VALDEZ

February 3, 1995

*Jeffrey R. Howard*, attorney general (*Brian R. Graf*, assistant attorney general, on the brief and orally), for the State.

*Joachim H. Barth*, public defender, of Laconia, by brief and orally, for the defendant.

BROCK, C.J. On February 21, 1992, a justice of the Superior Court (*Dalianis*, J.) issued a warrant authorizing the police to search the defendant's apartment and his person. Based on evidence seized pursuant to the search, the defendant was charged with possession of cocaine with intent to distribute in violation of RSA 318-B:2 (Supp. 1993). Following a hearing, the Superior Court (*Murphy*, J.) granted the defendant's motion to suppress, finding that the search was based on a warrant issued in violation of part I, article 19 of the New Hampshire Constitution. We affirm.

The State appeals, raising two issues for our consideration: first, whether the superior court erred in finding that the search of the defendant's residence based upon an anticipatory search warrant violated part I, article 19 of the State Constitution; second, assuming *arguendo* that the anticipatory search warrant in this case was impermissible, whether the superior court erred in suppressing the evidence seized where the police acted in good faith in obtaining and executing the warrant.

■ Subsequent to briefing and oral argument before this court, the State was notified that the defendant died on March 2, 1994. The State filed a motion requesting that we decide the issues raised in this appeal

even though the defendant's death would appear to render them moot. "[T]his court is not bound by rigid rules in determining whether an appeal is moot; rather, the question of mootness is a matter of convenience and discretion." *Moody v. Cunningham*, 127 N.H. 550, 553, 503 A.2d 819, 821 (1986). Because the issues in this case are "significant constitutional issues" of public interest and are likely to occur again, resolution of them would avoid future litigation. *Id.* We determine, therefore, that an opinion would serve a useful purpose and grant the State's motion. *Cf. Timberlane Regional Educ. Ass'n v. State*, 115 N.H. 77, 79, 333 A.2d 713, 714 (1975).

## I. Anticipatory Search Warrant

On February 21, 1992, Detective Bruce Hansen of the Nashua Police Department applied for a warrant to search the defendant's home at 20 Kessler Farm Drive, Apartment 709, in Nashua, and the person of the defendant, for evidence of drug dealing in violation of RSA 318-B:2. Detective Hansen's affidavit in support of the warrant application set forth, in part, the following facts:

VI. In October 1991, a second independent, confidential, reliable individual, who has furnished information to the Nashua Police Department which has led to the arrest of narcotics traffickers, informed the Nashua Police Department that an individual within Building 20 Kessler Farm Drive, in the Somerset Apartment Complex, this apartment being located on the second floor, whose name is Rafael, is a cocaine dealer dealing in weights including kilograms.

. . . .

X. In February 1992, the second confidential individual mentioned in this affidavit who has supplied reliable information to the Nashua Police Department which has led to the arrest of narcotics traffickers, responded to 20 Kessler Farm Drive, Apartment 709, and while within that apartment made contact with Rafael Canelo-Valdez and while within that apartment purchased a quantity of the narcotic drug, cocaine. The suspect substance was immediately relinquished to the members of the Nashua Police Department who conducted a field test which showed a positive reaction to the presence of the illicit, narcotic drug, cocaine. Listed informant viewed the photograph which had been supplied by the Lawrence Police Department of Rafael Canelo-Valdez and positively identified this individual as one in [*sic*] the same who is

residing at 20 Kessler Farm Drive, Apartment 709, as the same individual dispensing quantities of cocaine from that location.

XI.  On 21 February 1992, the second confidential individual mentioned in this affidavit who has supplied reliable information to the Nashua Police Department which has led to the arrest of narcotic traffickers responded to 20 Kessler Farm Drive, Apartment 709, and while within that apartment observed a quantity of the narcotic drug, cocaine.

Detective Hansen informed the magistrate, however, that the events in paragraph XI had not yet occurred but were expected to take place later that same evening. The magistrate then amended paragraph XI by striking the word "observed" and adding "did as was expected to [observe]." Detective Hansen was instructed by the magistrate that the warrant could only be executed if the informant observed cocaine as described in paragraph XI. Thereafter, the informant advised the police that he had observed cocaine in the defendant's apartment, and the search warrant was executed.

The superior court granted the defendant's motion to suppress evidence seized during the search, ruling that the issuance of the warrant violated part I, article 19 of the State Constitution. The court concluded that "[u]nder the specific facts of this case, it is found and ruled that the exclusionary rule mandates the suppression of the evidence obtained during the search which was based upon a 'self-executing search warrant.' The detached magistrate has inappropriately delegated [her] constitutional function to the prosecuting authority."

The State argues on appeal that anticipatory search warrants should be upheld as valid generally and that the warrant in the instant case passes constitutional muster. The State contends that because a neutral and detached magistrate made the determination that probable cause to search the defendant's residence would exist after the occurrence of the contingent event and because there is no question that the affidavit established probable cause once the contingent event occurred, there was no violation of the defendant's rights under part I, article 19. The defendant takes the position that under the facts of this case the search warrant failed to comply with the State Constitution because there was no probable cause at the time the warrant issued to believe that the future event would occur. While we agree with the State that anticipatory search warrants do not categorically violate part

I, article 19, we agree with the defendant that this warrant was unconstitutional.

Part I, article 19 provides:

Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions. Therefore, all warrants to search suspected places . . . are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order . . . to make search in suspected places . . . or to seize their property, be not accompanied with a special designation of the persons or objects of search . . . or seizure; and no warrant ought to be issued; but in cases, and with the formalities, prescribed by law.

We have interpreted part I, article 19 as "requiring an objective determination of probable cause by a neutral and detached magistrate." *State v. Kellenbeck*, 124 N.H. 760, 764, 474 A.2d 1388, 1391 (1984). Probable cause to search exists if a person "of ordinary caution would be justified in believing that what is sought will be found in the place to be searched . . . and that what is sought, if not contraband or fruits or implements of a crime, will aid in a particular apprehension or conviction." *State v. Jaroma*, 128 N.H. 423, 428, 514 A.2d 1274, 1277 (1986) (quotations omitted). The police must establish at the time they apply for a search warrant that there exists "a substantial likelihood of finding the items sought; they need not establish with certainty, or even beyond a reasonable doubt, that the search will lead to the desired result." *State v. Decoteau*, 137 N.H. 106, 111, 623 A.2d 1338, 1341 (1993) (quotation omitted). In determining whether probable cause exists, the magistrate considers the search warrant application, supporting affidavit, and any oral statements made under oath by the applicant. *See* RSA 595-A:4 (1986); *State v. Doe*, 115 N.H. 682, 684, 371 A.2d 167, 168 (1975).

An anticipatory search warrant is "a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir.), *cert. denied*, 493 U.S. 943 (1989). Anticipatory warrants raise the issue whether law enforcement officials may obtain from a magistrate a warrant conditioned upon a future event that, if fulfilled, would allow a search of the premises and persons identified in the warrant.

There is no express language in part I, article 19 that would prohibit the issuance of a warrant to search at a future time. In this respect we disagree with the reasoning of the superior court that the

constitutional requirement that probable cause be "previously supported by oath or affirmation" prohibits the issuance of an anticipatory search warrant. This language, rather, precludes any warrant from being issued if the application is not adjoined by sworn statements setting forth facts to support the probable cause determination.

██ Several federal courts have upheld the use of anticipatory search warrants under the fourth amendment to the United States Constitution, primarily in cases involving the controlled delivery of contraband. *See, e.g., United States v. Tagbering*, 985 F.2d 946 (8th Cir. 1993); *United States v. Wylie*, 919 F.2d 969 (5th Cir. 1990); *United States v. Goodwin*, 854 F.2d 33 (4th Cir. 1988). The United States Court of Appeals for the First Circuit recently held that anticipatory search warrants do not *per se* violate the fourth amendment. The court stated:

> [W]hen law enforcement personnel offer a magistrate reliable, independent evidence indicating that a delivery of contraband will very likely occur at a particular place, and when the magistrate conditions the warrant's execution for the search of that place on that delivery, the warrant, if not overbroad or otherwise defective, passes constitutional muster.

*United States v. Ricciardelli*, 998 F.2d 8, 11 (1st Cir. 1993).

The court reasoned that in cases involving the controlled delivery of contraband,

> the facts put forward in support of an anticipatory search warrant predicated on the planned delivery of contraband to a particular location establish a greater likelihood that the contraband will be found there at the time of the search (which will be contemporaneous with the arrival of the contraband, or nearly so) than do facts put forward in support of a more conventional search warrant predicated on the known recent location of contraband at the proposed search site.

*Id.* In addition, the court reasoned that "inserting a neutral, detached judicial officer as a buffer between a citizen's privacy rights and potential government overreaching . . . works equally as well in connection with anticipatory warrants" because the magistrate must still determine "whether there is probable cause to think that the contraband will be at the place to be searched at the time of the contemplated intrusion." *Id.*

The court, however, set out specific conditions for the issuance of anticipatory search warrants. "First, the magistrate must ensure that the triggering event is both ascertainable and preordained. The warrant should restrict the officers' discretion in detecting the occurrence of the event to almost ministerial proportions." *Id.* at 12. "Second, the contraband must be on a sure and irreversible course to its destination, and a future search of the destination must be made expressly contingent upon the contraband's arrival there." *Id.*; *cf. United States v. Garcia*, 882 F.2d at 703; *United States v. Lowe*, 575 F.2d 1193, 1194 (6th Cir.), *cert. denied*, 439 U.S. 869 (1978); *United States v. Odland*, 502 F.2d 148, 152 (7th Cir.), *cert. denied*, 419 U.S. 1088 (1974).

■ We find the logic of the First Circuit persuasive. Nevertheless, even if the conditions set forth in *Ricciardelli* were extended to the case before us, which does not involve a controlled delivery of contraband, it is readily apparent why the State's position fails. The warrant was made contingent on the confidential informant observing cocaine in the defendant's apartment. The affidavit in support of the warrant application, however, offers no facts to support a determination that that event was both "ascertainable and preordained" and on a "sure and irreversible course" to transpiring. There was, for example, no evidence to support a determination that on February 21, 1992, the informant was certain to "respond" to the listed address, that the informant would gain access to the apartment, or that there would be cocaine in the apartment for the informant to observe. If the magistrate was provided additional information by way of oral statements under oath by the applicant, those statements were not made part of the record and Detective Hansen failed to appear for the scheduled suppression hearing.

■ The existence of probable cause to search satisfies only part of the mandate of part I, article 19. That determination must be made by a neutral and detached magistrate. *State v. Kellenbeck*, 124 N.H. at 764–65, 474 A.2d at 1391; *see State v. Bradberry*, 129 N.H. 68, 80, 522 A.2d 1380, 1387 (1986) (Batchelder, J., concurring specially) (probable cause determinations must be made by court officers, not law enforcement officials). The only plausible interpretation of this record is that the magistrate found no probable cause to search prior to the confidential informant reporting to the police that he had observed cocaine in the defendant's apartment. As the superior court pointed out at the suppression hearing, if the magistrate concluded there was probable cause absent the occurrence of that event, "why then is it that [she] would have made such a specific comment by deleting certain language in the affidavit and making it conditional upon some future

behavior." We therefore affirm the superior court's ruling that because the detached magistrate "inappropriately delegated [her] constitutional function to the prosecuting authority," this search warrant was issued in violation of part I, article 19.

The dissent argues that we must undertake an independent inquiry into the existence of probable cause and concludes that even if the anticipatory portion of the affidavit is redacted, the remaining information as a matter of law supports a finding of probable cause. In this appeal, however, the State does not argue that the superior court erred by failing to review the sufficiency of the affidavit absent the contingent event, nor does it argue that we should undertake such a review. Rather, the State addresses its specific arguments to the validity of this anticipatory search warrant under the State Constitution, contending that because "[t]he determination that probable cause to search the defendant's residence would exist after the occurrence of the contingent event was made by a neutral and detached magistrate," and because "[t]here is no question that this affidavit established probable cause once the contingent event occurred," there was no violation of the defendant's rights under part I, article 19. Accordingly, we limit our decision to "the theory of the case as it has been presented to us." *State v. Valenzuela*, 130 N.H. 175, 179–80, 536 A.2d 1252, 1256 (1987), *cert. denied*, 485 U.S. 1008 (1988). Furthermore, a review of the transcript of the suppression hearing, the affidavit in support of the search warrant application, and the police report filed by Detective Hansen of his discussion with Judge Dalianis at the time the search warrant was issued casts serious doubt on any finding of probable cause supported by the redacted affidavit.

## II. Good Faith Exception to the Exclusionary Rule

The State next argues that even if we agree with the superior court that the search warrant violated part I, article 19, we ought to adopt a good faith exception to the exclusionary rule under the New Hampshire Constitution and reverse the court's suppression order. We hold that a good faith exception is incompatible with the guarantees contained in part I, article 19. The dissent's suggestion that our discussion on this issue merely constitutes dicta is without foundation.

The federal exclusionary rule was adopted by the United States Supreme Court in *Weeks v. United States*, 232 U.S. 383 (1914). The Court held that evidence seized in violation of the fourth amendment to the Federal Constitution must be excluded because to use such evidence would involve "a denial of the constitutional rights of the accused." *Id.* at 398. The *Weeks* Court established the exclusionary rule as a necessary corollary to the prohibition against unreasonable searches and seizures, concluding that fourth amendment guarantees

would be meaningless unless courts prohibited the government from using unlawfully seized evidence. *Id.* at 393–94.

This court, however, declined to adopt a State exclusionary rule in the years following *Weeks*. New Hampshire, like a majority of jurisdictions, then subscribed to the strict common law rule that a court must admit all competent and probative evidence regardless of its source. In *State v. Mara*, 96 N.H. 463, 465, 78 A.2d 922, 924 (1951), Justice Kenison explained: "In this State it has been the consistent practice for a century to admit relevant evidence in criminal cases although secured illegally. . . . Although the federal rule excluding such evidence has been in effect only since 1914, it has never been followed or approved in this State." (Citation omitted.) In support of its position, the court expressed discomfort with "decisions of the Supreme Court relating to search and seizure [which] seem to exhibit a continually changing and vacillating solution of the problem," *id.* at 466, 78 A.2d at 924, and noted that a majority of the States had not adopted the exclusionary rule, *id.* The court did, however, recognize that "[n]either rule is entirely satisfactory to both society and the individual and both rules may be the subject of abuse." *Id.* at 467, 78 A.2d at 925; *see also State v. Tracey*, 100 N.H. 267, 125 A.2d 774 (1956).

In 1961, the United States Supreme Court required state courts to apply the federal exclusionary rule in state prosecutions, recognizing "[t]he obvious futility of relegating the Fourth Amendment to the protection of other remedies." *Mapp v. Ohio*, 367 U.S. 643, 652 (1961). The Court held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Id.* at 655. The Court reiterated that the exclusionary rule was mandated by the Constitution to provide a remedy to those whose fourth amendment rights are violated. In addition, the Court noted that the exclusionary rule served to deter fourth amendment violations and protect judicial integrity. *Id.* at 658–59.

Beginning with *United States v. Calandra*, 414 U.S. 338 (1974), however, the Supreme Court began to retreat from the federal exclusionary rule. In refusing to apply the rule to grand jury proceedings, the Court stated that "the purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures . . . ." *Id.* at 347–48.

In *United States v. Leon*, 468 U.S. 897 (1984), the Court concluded that the fourth amendment does not require the suppression of evidence obtained pursuant to a constitutionally defective warrant, so long as the police acted in good faith reliance upon the warrant issued

by a neutral and detached magistrate. The Court held that evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, although ultimately found to be unsupported by probable cause, may be admitted in the government's case in chief. *Id.* at 913. Unlike its earlier opinions in *Weeks* and *Mapp* wherein the Court recognized several interrelated purposes to the exclusionary rule, in *Leon* the Court took the position that the sole purpose of the rule was to deter police misconduct. *Id.* at 916. The Court reasoned that as long as the officer acted in good faith reliance upon a warrant, there was no police misconduct "and thus nothing to deter." *Id.* at 921.

Because *Mapp* required New Hampshire's courts to apply the federal exclusionary remedy whenever a fourth amendment violation was found, there was little reason to employ a State exclusionary rule. Although this court never directly returned to the issue after 1956, *see State v. Tracey*, 100 N.H. 267, 125 A.2d 774, since at least 1983 our cases have implicitly recognized the existence of a State exclusionary rule. During this same time, in reaction to federal decisions narrowing the scope and content of fourth amendment rights, we repeatedly emphasized the importance of undertaking independent interpretation of our State constitutional guarantees. *See State v. Ball*, 124 N.H. 226, 231–33, 471 A.2d 347, 350–52 (1983); *see also State v. Bradberry*, 129 N.H. at 73, 522 A.2d at 1382 (opinion of Brock, C.J.); *State v. Koppel*, 127 N.H. 286, 291, 499 A.2d 977, 979–80 (1985); *State v. Sidebotham*, 124 N.H. 682, 686–87, 474 A.2d 1377, 1379–80 (1984); *State v. Settle*, 122 N.H. 214, 217–18, 447 A.2d 1284, 1285–86 (1982) (plurality opinion).

In *State v. McGann*, 124 N.H. 101, 106–07, 467 A.2d 571, 574 (1983), we held that a warrantless search of the defendant's vehicle violated his rights under part I, article 19, and stated, "Since the fruits of that search provided the primary basis for the objects that were the subject of the defendant's motion to suppress, that motion should have been granted." Similarly, in *State v. Tapply*, 124 N.H. 318, 325–326, 470 A.2d 900, 905 (1983), we held that an interview of the defendant while in police custody must be excluded as evidence because of a violation of the defendant's rights under part I, article 19, reasoning that because the detention was illegal, "regardless of the *Miranda* warnings, even if there were a valid waiver, the article 19 and fourth amendment violations stand as a bar to the use of the . . . statements." *Id.* at 326, 470 A.2d at 905.

Again, in *State v. Chaisson*, 125 N.H. 810, 819, 486 A.2d 297, 304 (1984), we held that the defendant's right to be free from an unreasonable seizure under part I, article 19 had been violated and ordered that "any evidence obtained in violation of this right cannot be

used at trial." *See also State v. Silvestri*, 136 N.H. 522, 528, 618 A.2d 821, 824 (1992) (defendant's motion to suppress should have been granted because seizure was illegal under State Constitution); *State v. Santana*, 133 N.H. 798, 809, 586 A.2d 77, 84 (1991) (illegal warrantless entry in violation of part I, article 19 requires suppression of the evidence). In none of these cases, however, was it explained why the State Constitution forbids the use of such evidence.

The warrant requirement embodied in part I, article 19 was intended to abolish general warrants and writs of assistance which had been used by the British to conduct sweeping searches based upon generalized suspicions and without specifying the places to be searched or things to be seized. *See State v. Tucker*, 133 N.H. 204, 206, 575 A.2d 810, 812 (1990); *see also State v. Cavanaugh*, 138 N.H. 193, 194, 635 A.2d 1382, 1383 (1993). When part I, article 19 was adopted as part of this State's Constitution in 1784, therefore, its purpose plainly was to prohibit the issuance of warrants that did not satisfy the requirements of probable cause and particularity.

This court has recognized that part I, article 19 safeguards privacy and protection from government intrusion. *See State v. Chaisson*, 125 N.H. at 816, 486 A.2d at 301; *State v. Kellenbeck*, 124 N.H. at 764, 474 A.2d at 1391; *State v. Theodosopoulos*, 119 N.H. 573, 580, 409 A.2d 1134, 1138 (1979), *cert. denied*, 446 U.S. 983 (1980); *see also State v. Bradberry*, 129 N.H. at 76, 522 A.2d at 1385 (Batchelder, J., concurring specially).

> [W]hen the entry is made into an individual's private dwelling, where there exists a strong expectation of privacy and protection from government intrusion, the requirement of a warrant is particularly stringent. To have it otherwise would [be to] obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.

*State v. Santana*, 133 N.H. at 803, 586 A.2d at 80 (quotations and citation omitted). Part I, article 19 thus manifests a preference for privacy over the level of law enforcement efficiency which could be achieved if police were permitted to search without probable cause or judicial authorization.

We view the exclusionary rule as a logical and necessary corollary to achieve the purposes for which prohibitions against unreasonable searches and seizures were constitutionalized. *Cf. State v. Flynn*, 123 N.H. 457, 465, 464 A.2d 268, 273 (1983) (suppression of evidence obtained in violation of Privacy Act, RSA chapter 359-C, is appropriate remedy to vindicate purposes behind the statute). While we do not

dispute that deterrence of police misconduct is a central aim of the exclusionary rule, *see State v. Gravel*, 135 N.H. 172, 181, 601 A.2d 678, 683 (1991), we disagree that it is the rule's sole purpose.

The exclusionary rule serves to redress the injury to the privacy of the search victim and guard compliance with the probable cause requirement of part I, article 19. *See State v. Novembrino*, 519 A.2d 820, 856 (N.J. 1987). "Enforcement of the rule places the parties in the position they would have been in had there been . . . no violation of the defendant's constitutional right to be free of searches [and seizures] made pursuant to warrants issued without probable cause." *Stringer v. State*, 491 So.2d 837, 850 (Miss. 1986) (Robertson, J., concurring). In so doing, the rule also preserves the integrity of the judiciary and the warrant issuing process. *See State v. Tucker*, 133 N.H. at 208, 575 A.2d at 813.

We hold that the good faith exception is incompatible with and detrimental to our citizens' strong right of privacy inherent in part I, article 19 and the prohibition against the issuance of warrants without probable cause. We draw support not only from the history of part I, article 19 and the development of our jurisprudence under that provision, but also from other States that have held that the good faith exception is inconsistent with state constitutional requirements of probable cause. *See State v. Marsala*, 579 A.2d 58 (Conn. 1990); *State v. Gutierrez*, 863 P.2d 1052 (N.M. 1993); *State v. Carter*, 370 S.E.2d 553 (N.C. 1988); *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991); *see also State v. Guzman*, 842 P.2d 660 (Idaho 1992); *People v. Bigelow*, 488 N.E.2d 451 (N.Y. 1985); *State v. Oakes*, 598 A.2d 119 (Vt. 1991). As the Pennsylvania Supreme Court concluded:

> [O]ur Constitution has historically been interpreted to incorporate a strong right of privacy, and an equally strong adherence to the requirement of probable cause . . . . Citizens in this Commonwealth possess such rights, even where a police officer in "good faith" carrying out his or her duties inadvertently invades the privacy or circumvents the strictures of probable cause. To adopt a "good faith" exception to the exclusionary rule . . . would virtually emasculate those clear safeguards which have been carefully developed . . . over the past 200 years.

*Commonwealth v. Edmunds*, 586 A.2d at 899.

"The framers did not intend the safeguards of the warrant requirement to be circumvented merely by allowing law enforcement officials to act reasonably under the circumstances." *State v. Ball*, 124 N.H. at 237, 471 A.2d at 354. "[W]e are simply unable to sanction a practice in which the validity of search warrants might be determined

under a standard of 'close enough is good enough' instead of under the 'probable cause' standard mandated by [part I, article 19] of our state constitution." *State v. Marsala*, 579 A.2d at 68. Because the search warrant in this case was not based upon a determination of probable cause made by a neutral and detached magistrate, we affirm the superior court's order suppressing the evidence seized pursuant to the search.

*Affirmed.*

BATCHELDER, J., concurred; JOHNSON, J., concurred specially; THAYER, J., with whom HORTON, J., joined, dissented.

JOHNSON, J., concurring specially:

I concur with the opinion of Chief Justice Brock. I write separately, however, because I am saddened by the language of Justice Thayer in his dissent which states that the majority is "invent[ing] new constitutional protections that some may argue are based on the whim of the majority." (Since "some" are not identified, the only plausible persons in that group are the author, and perhaps others. It should be noted that the law review article, as cited, does not use the word "whim.")

Such heightened rhetoric adds nothing to the jurisprudence of our State. I know of no one on this court—and, I stress, no one—who decides the cases that come before us on a whim. Justice Scalia has been described as a judicial "gladiator." I find the tenor of many of his decisions to be simply lacking in civility. *See* Lacovara, *Un-Courtly Manners*, ABA Journal, Dec. 1994, at 50. It would be regrettable that the writing of this court would now or in the future emulate this unfortunate practice. I would hope that this court, which heretofore has avoided such rhetoric, would not begin down the road to ever more offensive language.

THAYER, J., dissenting: I agree with the majority that the Trial Court (*Murphy*, J.) erred in holding that anticipatory warrants violated our State Constitution, but I disagree with the majority's failure to make an independent inquiry into the existence of probable cause, and I believe that the majority is incorrect in holding that the anticipatory clause of the warrant in question was improper. Additionally, I do not believe that we should, on these facts, either address or decide whether part I, article 19 of the State Constitution prohibits a good faith exception to the exclusionary rule. Accordingly, I respectfully dissent.

The affidavit in support of the search warrant issued in this case included the following anticipatory language:

> On 21 February 1992, the second confidential individual mentioned in this affidavit who has supplied reliable

information to the Nashua Police Department which has led to the arrest of narcotic traffickers responded to 20 Kessler Farm Drive, Apartment 709, and while within that apartment *did as was expected to [observe]* a quantity of the narcotic drug, cocaine.

The Magistrate (*Dalianis*, J.) substituted the emphasized language for the word "observed" because the event had not yet occurred. The inserted language more accurately described the anticipatory nature of the warrant.

The trial court held that our State Constitution does not permit anticipatory warrants. The trial court, however, never considered whether, after striking the anticipatory paragraph of the affidavit, sufficient facts were alleged to find probable cause. Nor did the trial court address the factual issue of whether the police acted with good faith or the legal issue of whether the good faith exception is consistent with our State Constitutional law. The trial court suppressed the evidence gathered pursuant to the warrant, and the State appealed.

While the appeal was pending, the defendant died. The State has asked us to waive the mootness doctrine. The majority grants that motion, which I would deny, but waiver of the mootness doctrine does not waive all of our procedural practices. This court has "a strong policy against reaching a constitutional issue in a case that can be decided on a nonconstitutional ground." *State v. Hodgkiss*, 132 N.H. 376, 379, 565 A.2d 1059, 1061 (1989). The majority, by failing to address the question of whether the warrant contains probable cause without the anticipatory language, unnecessarily addresses two questions of first impression in this jurisdiction: whether anticipatory warrants are constitutional, and whether our constitution prohibits a good faith exception to the exclusionary rule. I disagree with the majority's statement that the question of whether the warrant and supporting affidavit were sufficient to establish probable cause without the anticipatory clause was not preserved or presented by the State. The question was presented to the trial court, and additionally, the State has asserted in its brief to this court that the warrant was sufficient absent the anticipatory language.

Even assuming that the anticipatory provision should be deleted, the court should conduct an independent and objective review of the remainder of the affidavit to determine if probable cause exists. *See State v. Decoteau*, 137 N.H. 106, 111–12, 623 A.2d 1338, 1342 (1993). The majority, however, condones the trial court's failure to make an independent determination of probable cause, adopting the argument advanced by the defense attorney at the hearing on the motion to suppress that a reviewing court should inquire into the issuing magistrate's state of mind when reviewing a warrant. The majority's

use of a subjective test directly contradicts our case law and its own standard in reviewing the anticipatory language of the affidavit in this case. The majority's use of two different tests within the same opinion, on like issues, is, to say the least, confusing.

The majority implies that the remainder of the affidavit cannot be independently evaluated because the magistrate implicitly conditioned her finding of probable cause on the anticipatory portion of the warrant. In my view, the record does not support a finding that the magistrate so conditioned her finding of probable cause. The language that the majority attributes to the superior court is simply the court's summation of the defendant's argument. Neither the magistrate nor the superior court addressed the question of whether probable cause existed without the anticipatory paragraph. Furthermore, the majority fails to explain why such reliance would bar the courts from evaluating the remainder of the affidavit and cites no authority for its holding. I believe our case law compels a different result.

The standard for reviewing the validity of search warrants is well settled. *See Decoteau*, 137 N.H. at 111–12, 623 A.2d at 1341–42. In *State v. Sterns*, 130 N.H. 475, 547 A.2d 672 (1988), this court ruled that because a portion of the affidavit in support of the warrant contained information that had been illegally obtained, that portion could not be considered in determining whether probable cause existed. *Id.* at 484, 547 A.2d at 676. We then redacted the offending portion of the affidavit. *Id.* In all likelihood, the magistrate issuing the original warrant relied on the improper information, but that did not prevent us from examining the redacted affidavit to determine if probable cause *otherwise* existed. Nor were we required to inquire into the magistrate's subjective determinations with regard to the original affidavit. Similarly, in the case at bar, regardless of whether the magistrate originally relied on the anticipatory paragraph of the affidavit, we can and should independently determine whether the affidavit, after that paragraph has been stricken, contains sufficient information to justify a finding of probable cause. The majority's adoption of a subjective standard, which requires evidence of the magistrate's intent that "probably could [be demonstrated] only by producing the justice as a witness so that he could be asked to reconstruct his state of mind when he issued the warrant," *United States v. Herrold*, 962 F.2d 1131, 1143 (3rd Cir.), *cert. denied*, 113 S.Ct. 421 (1992), is inconsistent with our prior law in this area. *See State v. Valenzuela*, 130 N.H. 175, 190–91, 536 A.2d 1252, 1263 (1987), *cert. denied*, 485 U.S. 1008 (1988); *see also State v. Christy*, 138 N.H. 352, 356, 639 A.2d 261, 264 (1994) (officer's subjective beliefs regarding probable cause are irrelevant; only issue is whether a reasonable person would believe probable cause existed). The standard applied to

warrants is the same whether we are reviewing a finding of probable cause or a finding of a lack thereof. *Decoteau*, 137 N.H. at 111, 623 A.2d at 1342.

The standard for determining whether the redacted affidavit establishes probable cause is: "Given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, was there a fair probability that contraband or evidence of a crime would be found in the particular place described in the warrant?" *State v. Silvestri*, 136 N.H. 522, 525, 618 A.2d 821, 823 (1992) (quotations and citations omitted). The evaluation of the affidavit must "reflect the contextual, commonsensical, and fact-based nature of any probable cause determination." *State v. Jaroma*, 128 N.H. 423, 428, 514 A.2d 1274, 1277 (1986). In a case such as this, where a great deal of the information contained in the affidavit is based on information obtained from an informant, the appropriate standard to apply is a totality-of-the-circumstances test. *State v. Carroll*, 131 N.H. 179, 187, 552 A.2d 69, 74 (1988). Under that test, the elements of veracity and basis of knowledge are important considerations in determining probable cause. *Id.*

The redacted affidavit states that the police had received information from four different informants regarding illegal drug activity by the defendant or at his residence. The informants were described as having provided reliable information to the police in the past, and some facts were provided regarding how the informants had come by their knowledge. While the statements regarding reliability and basis of knowledge may not have been sufficient standing alone, the surrounding events and investigation by the police detailed in the affidavit were sufficient for a finding of probable cause. *See id.* at 188, 552 A.2d at 74.

The police knew that the defendant had been previously arrested in September 1990 for drug trafficking. Additionally, cocaine had been obtained from the defendant's residence on three separate occasions, the first in September 1991, the second in November 1991 through a controlled buy made by one of the informants, and the third in February 1992, also by using an informant to purchase the drugs. The police received additional information from a concerned citizen regarding the high level of foot traffic through the defendant's apartment, and the affiant determined, based on his experience as a police officer, that such traffic was consistent with illegal narcotics trafficking. The police also received information from two other confidential informants that the defendant was engaged in illegal drug trafficking at his residence. The drug purchases corroborate the information received from the confidential informants. Additionally,

from this series of events, it is reasonable to infer that illicit drug transactions had occurred at this location for a period of approximately six months and that the illegal activity was continuing. *See Valenzuela*, 130 N.H. at 193–94, 536 A.2d at 1265. Considering the totality of the circumstances, I would find that the redacted affidavit provided probable cause to issue the search warrant; therefore, the evidence obtained in the search should not have been suppressed.

I next address my disagreement with the majority concerning its analysis of anticipatory warrants. I agree with the majority statement that part I, article 19 of the State Constitution does not prohibit the issuance of an anticipatory warrant, but I disagree with the majority's analysis of the recent federal case law in this area. The majority relies heavily on the analysis of the United States Court of Appeals for the First Circuit in *United States v. Ricciardelli*, 998 F.2d 8 (1st Cir. 1993), but it fails to address that court's later statements regarding anticipatory warrants in *United States v. Gendron*, 18 F.3d 955 (1st Cir.), *cert. denied*, 63 U.S.L.W. 3437 (U.S. Dec. 5, 1994).

In *Gendron*, the court noted that "anticipatory warrants may . . . offer greater, not lesser, protection against unreasonable invasion of a citizen's privacy." *Id.* at 965. The court construed *Ricciardelli* as not imposing heightened standards of specificity on anticipatory provisions contained in search warrants and their supporting documents. *Id.* at 966. These provisions, like all warrant provisions, must be *reasonably* specific. Anticipatory events, by their very nature, are not certain; they are predictions of future events. The specificity requirement must be read in light of that fact. The federal court also stressed that descriptions in warrants and the supporting documents should be read in a commonsense, as opposed to hypertechnical, manner, which is consistent with our law. *See, e.g., State v. Decoteau*, 137 N.H. at 112, 623 A.2d at 1342; *State v. Jaroma*, 128 N.H. at 428, 514 A.2d at 1277.

A close examination of the two federal cases reveals that the majority misapplies the legal test enunciated by the First Circuit. These federal cases hold that an affidavit containing anticipatory language must provide sufficient information to allow the magistrate to determine that: (1) the triggering event is reasonably ascertainable so that the officer has very little discretion, *Ricciardelli*, 988 F.2d at 12; (2) the triggering event is reasonably preordained, meaning that it is reasonably likely to occur, *id.* at 11; and (3) there is some connection between the triggering event and the location to be searched. *Id.* at 13.

In this case, the preconditions to an anticipatory warrant, as set out in *Ricciardelli* and explained in *Gendron*, were clearly met. The first prong concerns the officer's ability to know that the triggering event has occurred. The major concern addressed by the First Circuit in these

anticipatory warrant cases is the amount of discretion given to the officers. In order to be valid, "[t]he warrant should restrict the officers' discretion in detecting the occurrence of the event to almost ministerial proportions." *Ricciardelli*, 988 F.2d at 12. In this case, the warrant specified the triggering event, the observation of narcotics by the confidential informant at the defendant's residence. It also specified the specific date on which the event was to occur. It is hard to imagine how a warrant that was conditioned on a specific person going to a specific address on a specific day and observing a specific thing could have been made less discretionary.

The second prong of the test concerns the predictability of the triggering event. The magistrate must be able to make a determination that the event is reasonably likely to occur. In this case, the affidavit contained a great deal of information regarding the alleged illegal activities at the defendant's address. There was information from four different informants, along with descriptions of drug purchases made at that address on three different occasions. Additionally, there was information regarding the prior involvement between the police and the confidential informant who was expected to observe narcotics at the defendant's residence. In fact, this informant had previously purchased narcotics for the police at this location. The magistrate, based on these factual allegations, could *reasonably* conclude that the confidential informant would go to the defendant's apartment on the day in question, that he again would gain entrance to the apartment and that he again would observe illegal narcotics at that location.

The final prong of the test concerns the link between the triggering event and the location to be searched. In this case, the triggering event was the observation of drugs at the location to be searched. A closer link is hard to imagine. Given the majority's rejection of such an "explicit, clear and narrowly drawn" provision, *Ricciardelli*, 988 F.2d at 12, it is hard to envision a situation where the majority would uphold the use of an anticipatory warrant.

Although the majority opinion recites the language of the *Ricciardelli* case, it errs by including language that was tailored to address concerns that arise only in the context of delivery of contraband. The "sure and irreversible course" language relied upon by the majority was designed to insure that there was a relationship between the triggering event and the location to be searched. *Id.* at 13. *Ricciardelli* dealt with the delivery of contraband, and a problem arose when the defendant picked the package up at the post office as opposed to having it delivered to his home, which was the place to be searched. Because the package did not arrive at Ricciardelli's home, probable cause did not exist to search that location at the time when the anticipatory event occurred and the warrant was supposedly effective.

Obviously, in the instant case where the contraband is not to be delivered, but is believed to have been present at the location for an extended period of time, and the anticipatory provision is used to insure that it is still present, the concerns raised in the delivery context do not apply. By inappropriately including this part of the test in a non-delivery context, the majority has required that an affidavit containing anticipatory language establish to a virtual certainty that contraband is present at a specific location before a warrant could issue.

The majority also errs by restricting its review of the affidavit solely to the anticipatory provision. There is nothing in the federal cases that would require such a result. In fact, in *Gendron*, the First Circuit stressed the importance of looking to the entire affidavit when evaluating an anticipatory provision. *Gendron*, 18 F.3d at 966. This supports our practice of reviewing the warrant and its supporting affidavit when making probable cause determinations.

On the issue of the exclusionary rule and our State Constitution, I am compelled to point out that the majority is addressing a constitutional issue that was not addressed by the trial court and without a factual finding by the trial court concerning the requisite factual predicate. That is, we are deciding whether the good faith exception to the exclusionary rule is compatible with our State Constitution, an issue not addressed by the trial court, in the absence of a finding that the police, in this case, acted in good faith. Without such a finding, the majority's discussion of this issue can be viewed as dicta.

Even assuming, however, that the warrant had not been supported by probable cause and that good faith had been found, I cannot agree with the majority's holding that the evidence obtained thereby must be suppressed because I do not agree that the good faith exception would violate our State Constitution or be inconsistent with our prior decisions.

This court steadfastly refused to adopt an exclusionary rule and only applied it when forced to do so by the federal judiciary. *State v. Mara*, 96 N.H. 463, 467, 78 A.2d 922, 925 (1951); *State v. Davis*, 108 N.H. 45, 48, 226 A.2d 873 (1967) (noting that *Mapp v. Ohio* had made the exclusionary rule mandatory on the States). The exclusionary rule is a creation of the federal judiciary. *Mapp v. Ohio*, 367 U.S. 643, 648 (1961). When the rule was first forced on the States, the United States Supreme Court held that the rule was constitutionally mandated, basing its constitutional argument on the dual grounds of deterring police misconduct and protecting judicial integrity. *Id.* at 658–60. Since that time, the rule has been consistently refined by the United States Supreme Court. The Court has recognized that the exclusionary rule

"is a judicially created remedy" and that as a "remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra*, 414 U.S. 338, 348 (1974). Over time, the Court has concluded that the sole rationale for the rule was the need to deter illegal *police* conduct, not "to punish the errors of judges and magistrates," and therefore suppression is only warranted when the police do not act in good faith. *United States v. Leon*, 468 U.S. 897, 916 (1984).

While the majority acknowledges that the United States Supreme Court has repudiated the original constitutional basis for the exclusionary rule and has reformulated the rule to recognize a good faith exception in keeping with the purpose of the rule, the majority has chosen to interpret our State Constitution as requiring the now discredited federal rule. It does this despite over 100 years of New Hampshire case law that specifically held that evidence, no matter how illegally obtained, was admissible "if it was otherwise competent and pertinent to the issue," *State v. Flynn*, 36 N.H. 64, 72 (1858), and that considered and rejected the exclusionary rule under our constitution, stating that "[u]nless the majority rule is subjected to legislative change, we shall continue to follow it unless a higher judiciary requires otherwise." *Mara*, 96 N.H. at 467, 78 A.2d at 925. Additionally, the majority adopts the repudiated federal rule and rejects the favored federal rule even in light of our case law that would support a contrary holding.

Only four years ago, this court recognized that "while [the fourth amendment and part I, article 19] are not necessarily identical in scope, it is logical, given their common ancestry, that the fourth amendment and part I, article 19 would be subject to parallel interpretations." *State v. Pellicci*, 133 N.H. 523, 539, 580 A.2d 710, 720 (1990) (Brock, C.J., concurring specially). An analysis of recent New Hampshire case law leads inevitably to the conclusion that while the exclusionary rule has been used as a tool in insuring compliance with the dictates of the State Constitution, it is not, as the majority asserts, "a logical and necessary corollary to achiev[ing] the purposes for which prohibitions against unreasonable searches and seizures were constitutionalized."

Since the *Mapp* decision forced New Hampshire courts to recognize the exclusionary rule, this court has repeatedly stated that "the primary purpose behind the exclusionary rule is the deterrence of unlawful police conduct." *State v. Spero*, 117 N.H. 199, 205, 371 A.2d 1155, 1158 (1977); *see also State v. Jaroma*, 137 N.H. 562, 568, 630 A.2d 1173, 1177 (1993); *State v. Gravel*, 135 N.H. 172, 181, 601 A.2d 678, 683 (1991); *State v. Beaulieu*, 119 N.H. 400, 404, 402 A.2d 178, 181 (1979). In *Spero*, a police officer made material misrepresentations in

an affidavit in support of a warrant. This court held that the defendant could challenge a facially sufficient affidavit if he could show that the affidavit contains material misrepresentations. *Spero*, 117 N.H. at 204, 371 A.2d at 1158. However, the court held that in order to warrant suppression, "more than just a material misrepresentation must be shown. *The primary purpose behind the exclusionary rule is the deterrence of unlawful police conduct.* Therefore, the evidence in question should be suppressed *only* if the misrepresentations were made intentionally or recklessly." *Id.* at 205, 371 A.2d at 1158 (emphasis added) (citations omitted). Under this case, police conduct would result in suppression only when to do so would serve the purpose of deterrence.

The majority opinion also argues that a good faith exception to the exclusionary rule would undermine the probable cause requirement for searches and seizures. Its argument seems to be founded in the belief that any evidence found through a search based on less than probable cause is constitutionally inadmissible. That argument directly contradicts this court's holdings in recent cases. This court has recognized that under certain circumstances, a search based on less than probable cause will not be deemed unreasonable under part I, article 19. *See, e.g., State v. Levesque*, 123 N.H. 52, 56, 455 A.2d 1045, 1047 (1983) (approving inventory searches); *State v. Radziewicz*, 122 N.H. 205, 210, 443 A.2d 142, 146 (1982) (approving searches incident to arrest). Investigative stops are reasonable and evidence seized pursuant to them is admissible provided that the police officer was acting based on a "reasonable suspicion." *State v. Kennison*, 134 N.H. 243, 246, 590 A.2d 1099, 1101 (1991); *see also State v. Noel*, 137 N.H. 384, 389, 628 A.2d 692, 695 (1993); *State v. Hamel*, 123 N.H. 670, 676, 466 A.2d 555, 558 (1983). The rationale that this court has articulated for allowing the admission of such evidence is the need to balance "the governmental interest that allegedly justified the stop against the extent of the intrusion on the protected interest." *State v. Pellicci*, 133 N.H. at 529, 580 A.2d at 713.

This court has also allowed the use of evidence seized on less than probable cause in other contexts. Most importantly, it has endorsed the notion of a good faith exception to the exclusionary rule in cases where a police officer acts under a statute that is later determined to be unconstitutional. As early as 1989, only five years after the United States Supreme Court first recognized the good faith exception, this court stated that even if a statute were declared unconstitutional, "evidence derived from a search made by an officer relying on a statute in *good faith* need not be suppressed." *State v. Turmelle*, 132 N.H. 148, 154, 562 A.2d 196, 200 (1989) (emphasis added). The court reiterated its position in *State v. Jaroma*, a case decided under the New

Hampshire Constitution. In that case, an officer made a valid arrest under an allegedly unconstitutional statute. We held that because the officer *"acted in good faith reliance* on the statute's validity, the deterrence rationale would not be served by suppressing the evidence even if we were to hold [the statute] unconstitutional." *Jaroma,* 137 N.H. at 569, 630 A.2d at 1177 (emphasis added).

It would be logically inconsistent for this court to recognize the good faith exception in cases where the police act under an unconstitutional statute, but refuse to recognize an exception when the police act in good faith reliance on a warrant issued by a neutral and detached magistrate. The majority claims that the exclusionary rule serves to "guard compliance with the probable cause requirement of part I, article 19," and implies that a good faith exception in the case of mistakenly issued warrants would impugn the "integrity of the judiciary." It fails to explain, however, why allowing the police to benefit from an unconstitutional statute does not pose similar problems. The privacy interests of far more citizens are implicated by the enactment of an unconstitutional statute than by an improperly issued warrant. The majority opinion argues that our constitution prevents a good faith exception to the exclusionary rule in the context of warrants, even though we have recognized it in the context of statutes, but fails to recognize that the enactment of statutes allowing random, unconstitutional searches was as great a fear of the original drafters of both the State and Federal Constitutions. *Illinois v. Krull,* 480 U.S. 340, 362 (1987) (O'Connor, J., dissenting).

The majority bases its adoption of the rejected federal exclusionary rule, instead of the more appropriate and recent good faith exception rule, on cases in the last ten years that it asserts "implicitly recognized the existence of a State exclusionary rule." While it is true that these cases could be read to find such recognition, the majority errs in relying on such cases as its precedent for interpreting the New Hampshire Constitution. The cases relied on by the majority contain no analysis of the State Constitution, nor do they explain why departure from the present federal rule and adoption of the repudiated federal rule is appropriate in these circumstances.

The foundation of the majority's opinion is the decision of *State v. Ball,* 124 N.H. 226, 471 A.2d 347 (1983). In that case, this court recognized that "it has the power to interpret the New Hampshire Constitution as more protective of individual rights than the parallel provision of the United States Constitution." *Id.* at 231–32, 471 A.2d at 350–52. Having the power to interpret some provisions as providing greater protection, however, does not mandate that we must interpret our constitution more broadly, nor does it give us permission to invent new constitutional protections that some may argue are based on the

whim of the majority. *See, e.g.,* Hudnut, *State Constitutions and Individual Rights: The Case for Judicial Restraint,* 63 Denv. U. L. Rev. 85, 95–96 (1985).

State supreme courts have been criticized for their failure to properly analyze the historical bases of their constitutions when purporting to rest their decisions on state constitutional grounds. *See* Gardner, *The Failed Discourse of State Constitutionalism,* 90 Mich. L. Rev. 761, 793–94 (1992); *see also* Comment, *State Courts Reject Leon on State Constitutional Grounds: A Defense of Reactive Rulings,* 47 Vand. L. Rev. 917, 932–33 nn.105–14 (1994). In fact, our decisions in particular have been criticized as being "devoid of any kind of language that could furnish the basis of a discourse of distinctiveness." Gardner, *supra* at 803–04. This criticism is particularly acute when States interpret their own constitutions at variance with the federal constitutional law. *See State v. Denney,* 130 N.H. 217, 230, 536 A.2d 1242, 1250 (1987) (Thayer, J., dissenting). No one disputes our ability to interpret our constitution differently than the Federal Constitution, but when, as here, the federal and State provisions are "subject to parallel interpretations," *Pellicci,* 133 N.H. at 539, 580 A.2d at 720 (Brock, C.J., concurring specially), such divergence should be based on sound reasoning. *See* Hudnut, *supra.* Reactive rulings, utterly lacking in analysis or historical basis, are not a sound manner of creating constitutional jurisprudence. *Denney,* 130 N.H. at 234, 536 A.2d at 1252 (Thayer, J., dissenting); *State v. Jewett,* 500 A.2d 233, 235–36 (Vt. 1985); Comment, *supra* at 932 n.105.

The majority, when asked to choose between accepting the current federal exclusionary rule, which incorporates the good faith exception and is the result of scholarly consideration and subsequent refinement, and the old rule, that has been rejected by the federal judiciary that created it, has inexplicably chosen to accept the latter. I believe this choice to be in error. A good faith exception to the exclusionary rule would not undermine our constitutional protections and would be consistent with our case law in this area. In light of the above, I respectfully dissent.

HORTON, J., joins in the dissent.