[No. 11306. Department One. November 29, 1913.]

The State of Washington, *Respondent*, v.

A. A. Nordskog, *Appellant*.[1]

Telegraphs and Telephones—Offenses—Damaging Telephone Lines—Wire Tapping. A professional wire tapper who tapped a telephone wire leading to a detective's office, by attaching two fine wires to the cable wire in the cable box and connecting with a heavy wire to his apparatus, is not guilty of malicious mischief as defined by Rem. & Bal. Code, § 2656, providing that any person who wilfully or maliciously removes, damages or destroys any telegraph, telephone or electric transmission line shall be guilty of a misdemeanor, where the tapping did not injure or damage the wire or any property or interfere with the transmission of messages; since the physical invasion injuring the property is necessary to constitute the offense.

Same—Offenses—Trial—Issues and Proof. A conviction of a wire tapper for malicious mischief, in removing or destroying a telephone wire, under Rem. & Bal. Code, § 2656, subd. 6, cannot be sustained by reference to Id., subd. 18, relating to intercepting, reading or delaying a telephone message, where there was no evidence to sustain that part of the charge.

Appeal from a judgment of the superior court for King county, Humphries, J., entered February 27, 1913, upon a trial and conviction of malicious injury to property. Reversed.

*J. M. Hammond* and *Frank E. Hammond*, for appellant.

*John F. Murphy, Crawford E. White*, and *Reah M. White-head*, for respondent.

Chadwick, J.—Defendant was tried and convicted of the crime of wilfully and maliciously damaging the property of the Pacific Telephone and Telegraph Company. The information was filed under Rem. & Bal. Code, § 2656, sub. 6 (P. C. 135 § 805), which reads as follows:

[1]Reported in 136 Pac. 694.

"Every person who shall willfully or maliciously remove, damage or destroy:

"(6)    A telegraph, telephone or electric transmission line or any part thereof, or any appurtenance thereto, or apparatus connected with the operation thereof;

"Shall be guilty of a misdemeanor."

The charging part of the information is as follows:

"He, said A. A. Nordskog, in the county of King, state of Washington, on the 5th day of November, 1912, did then and there willfully, unlawfully and maliciously damage the electric telephone transmission wire of the Pacific Telephone and Telegraph Company, a corporation duly organized and existing under and by virtue of the laws of the state of California, and doing business in the state of Washington, by then and there tapping and connecting a wire thereto, and willfully, unlawfully and maliciously intercepting and reading a message then and there being sent and transmitted on said electric telephone transmission wire, said wire being number Elliott 2538, the property of said Pacific Telephone and Telegraph Company, and a public utility."

H. P. Murphy is an electrician and an experienced telephone man. He is described by the trial judge as a professional wire tapper, having previously performed such services for the Burns Detective agency, the manager of which is the prosecuting witness in this case. He testifies that in July, being at the time not employed by the Burns people, he was employed, together with the defendant, to do certain detective service for the Seattle Times. He says, that he, in company with defendant, tapped the wire leading into the office of the Burns Detective agency. That the wire was tapped, is proven and is not denied, although defendant says that it was done over his objection; that he advised Murphy not to do it. Afterwards, conceiving that defendant was "double crossing" him, Murphy voluntarily told the manager of the detective agency that he and defendant had tapped its wire. He was then taken into the employ of the detective agency and after a lapse of about one month, defendant was arrested. The manner of tapping, as described by Murphy, is accomplished by first

getting the location of the cable wire in the cable box, and then running a pair of fine wires through the box, out through its' outer edge, and then running a heavy duplex from that point to the top of the building and from thence to the room where the wire tapper has his apparatus. The wire used is what is known as magneto wire, being a very small wire a little larger than a thread. It is ordinarily used for making coils. It would require a minute inspection of the cable box to determine whether the wire was tapped. Conversations over the 'phone would not be in any way interrupted nor would any one using the telephone know that the tap was on.

Upon some theory not entirely clear to us, the court held that the act complained of was a damaging within the meaning of the statute. It is our judgment that the law will bear no such interpretation. It is a cardinal principle of statutory construction that the first consideration in the interpretation of questioned statutes is to inquire as to the object of the law. The statute here involved is a part of the criminal code, and is found under the sub title "Injuring Public Utilities," and its purpose, standing alone and compared with other sub-sections, is unquestionably to preserve the efficiency of the public utilities of the state. To offend against it, there must be such physical invasion of the quasi public property as to destroy the property or so injure it that it will not meet the ordinary tests of efficiency. In the instant case, the property of the telephone company was not "removed or destroyed." Its use was in no way impaired; its business was in no way interrupted. It is not complaining. To hold under this state of facts that the mere attachment of two thread like wires is a damage, would be to overrule the legislative intent by the most strained sort of judicial construction.

The state seeks to sustain its case by calling our attention to the fact that the information is broad enough to cover sub-. division 18 of Rem. & Bal. Code, § 2656 (P. C. 135 § 805), which reads as follows: "Who shall intercept, read or in any manner interrupt or delay the sending of a message over any

telegraph or telephone line." Inasmuch as there is no evidence to sustain this part of the charge, it is unnecessary to follow counsel's argument.

We do not want to be understood as condoning in any way the offense of wire tapping. The record before us warrants the assertion that there has been altogether too much of this form of pilfering going on in this state, and the omission of the law now disclosed calls aloud for legislative action.

In the event that the legislature is disposed to meet our suggestion, the law should be so framed that the privacy of all citizens, as well as the detective agencies, may be protected, and that any tampering or interference, however slight, that is not done under the rules of the company and by its agents, or under some regulation of the public service commission, may be prohibited. The record shows that the citizen has suffered from this manner of invasion in greater degree and more often than has the detective agency.

Reversed and remanded with instructions to dismiss.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.