Municipal Court of Amherst,
No. 4488.

STATE *v.* MILTON E. TRACEY.

Argued June 6, 1956.

Decided July 6, 1956.

*Louis C. Wyman,* Attorney General, *Elmer T. Bourque,* Assistant Attorney General and *Conrad Danais,* county solicitor (*Mr. Bourque* orally), for the State.

*Robert J. Doyle* (by brief and orally), for the defendant.

KENISON, C. J. This is a test case to determine whether evidence obtained by wire-tapping is admissible in state criminal prosecutions and is a case of first impression in this jurisdiction. The only relevant state statutory provision is RSA 572:3, which makes it a felony to injure, destroy or damage any " . . . wires or other materials or fixtures . . . " of any public utility. Similar statutes have been uniformly construed as applicable only to damage or injury to the wires and property of the public utility and are in no sense regarded as regulating or prohibiting wire-tapping. *State* v. *Nordskog,* 76 Wash. 472, 474; *Young* v. *Young,* 56 R. I. 401, 406. This statute which was enacted in 1917 (Laws 1917, *c.* 145, *s.* 1) is a typical malicious mischief statute and has no application to the wire-tapping involved in this proceeding. Westin, The Wire-Tapping Problem: An Analysis and a Legislative Proposal, 52 Col. L. Rev. 165, 182 (1952).

The legality and desirability of using evidence obtained by wire-tapping has been a consistently controversial subject. 8 Wig. Ev. (3rd *ed.*) *s.* 2184b; *Olmstead* v. *United States,* 277 U. S. 438; Hearings on wire-tapping before Subcommittee No. 5 [House] Committee on the Judiciary on H. R. 762, 867, 4513, 4728 and H. R. 5096, 84th Cong. 1st Sess. (1955). The Communications Act of 1934, 47 U. S. C. A., *s.* 605, was first construed broadly to prohibit the testimony of federal agents as to the contents of intercepted telephone messages and information obtained through wire-tapping leads. *Nardone* v. *United States,* 302 U. S. 379; *Nardone* v. *United States,* 308 U. S. 338. Likewise section 605 was construed to prohibit evidence in federal courts of intrastate messages as well as interstate messages. However this section soon received a narrow and restricted construction (*Goldstein* v. *United States,* 316 U. S.

114) and it was ruled in *Goldman* v. *United States*, 316 U. S. 129, that it did not prohibit evidence obtained by the use of a detectaphone. In 1952, in *On Lee* v. *United States*, 343 U. S. 747, an informer, equipped with a concealed walkie-talkie transmitter, talked with the defendant in his laundry while outside a federal agent listened in with a receiver and later testified at the defendant's trial. A majority of five held the evidence did not violate either the Fourth Amendment or section 605 of the Communications Act. See 66 Harv. L. Rev. 128. Finally in *Schwartz* v. *Texas*, 344 U. S. 199, it was decided that section 605 did not require the exclusion of wire-tapping evidence in state courts.

More recent decisions hold out little hope for those charged with horse-race bookmaking. In 1954, in *Irvine* v. *California*, 347 U. S. 128, there were five separate opinions but a majority ruled that in a state prosecution evidence of bookmaking obtained from a concealed microphone in the defendant's home was not inadmissible and did not violate either the Communications Act or the Fourteenth Amendment. See *Wolf* v. *Colorado*, 338 U. S. 25. In the same year it was held that a Maryland statute which prohibited admission in criminal cases of illegally obtained evidence but allowed it for certain gambling misdemeanors in certain populous counties was valid and did not violate the Fourteenth Amendment. *Salsburg* v. *Maryland*, 346 U. S. 545.

It is doubtful if any responsible citizen would approve of indiscriminate wire-tapping by anybody for any purpose. There is much to be said for the defendant's argument that wire-tapping evidence is dangerous and subject to blackmail, encourages illegal law enforcement, is often no better than perjured testimony given in open court and is "slimy activity which directly and adversely affects our social and economic life." On the other hand, there is much to be said for the view that some regulated wire-tapping for certain serious crimes is a necessary adjunct for the protection of national and state security and effective police enforcement of law. Some of these conflicting considerations are set forth in Rogers, The Case for Wire-Tapping, 63 Yale L. J. 792 (1954) and Donnelly, Comments and Caveats, *Id.*, 799. "In the light of the ubiquity of wire-tapping in daily life, the uncertainty, abuse, and confusion surrounding the enforcement of Section 605, and the general inadequacy of federal and state laws dealing with wire-tapping, it appears clear that legislative action must be taken. To continue the present stalemate, in which both the citizen and the law en-

forcer suffer, would be intolerable. To expect the Supreme Court to use the existing statute to find a solution is to confuse the function of the Court with that of Congress." Westin, The Wire-Tapping Problem: Analysis and a Legislative Proposal, 52 Col. L. Rev. 165, 186 (1952).

An even stronger case can be made for the proposition that a state supreme court should not establish the ground rules for the use and to prevent the abuse of wire-tapping when the Legislature of this state has taken no action on the subject. Whether wire-tapping should be allowed for certain serious crimes or not at all, whether wire-tapping if allowed should first be approved by the Attorney General or a judge or both, whether violators of wire-tapping should be liable in a civil suit for the violation of a right of privacy at a stated minimum of dollars and a host of other matters are questions which are obviously the province of legislative determination and regulation. While the process of judicial interpretation may in some instances run close to the line of legislation, there is no constitutional mandate which requires or authorizes the judiciary to prescribe a legislative program for the regulation of wire-tapping. See Joint Legislative Committee to Study Illegal Interception of Communications, Report, McKinney's 1956 Session Laws of New York, 1348-1375; 30th Report Judicial Council of Massachusetts 49 (1954), 40 Mass. L. Q. 49. Furthermore, there is some evidence that attempts in other jurisdictions by the judiciary to police enforcement has not been a marked success. Waite, Judges and the Crime Burden, 54 Mich. L. Rev. 169 (1955).

For almost one hundred years this state has adhered to the majority rule that evidence secured through illegal search and seizure is admissible even though there are criminal and civil sanctions against those who obtain the evidence in that manner. N. H. Const., Pt. I, *Art.* 19. *State* v. *Flynn,* 36 N. H. 64; *Boynton* v. *Trumbull,* 45 N. H. 408, 410. And we have continued to follow that rule even after the decision in *Weeks* v. *United States,* 232 U. S. 383, established the minority rule which excluded such evidence in the federal courts. *State* v. *Agalos,* 79 N. H. 241; *State* v. *Sturtevant,* 96 N. H. 99, 104. If wire-tapping by the police is "the Orwellian horror" depicted by some (Note, Wire-Tapping in New York, 31 N. Y. U. L. Rev. 197, 218 (1956) ), the Legislature should make it a crime and subject it to such regulations as are demanded in the light of modern electronic devices and

discoveries. Until that time we adhere to the views expressed in 1951 in *State* v. *Mara*, 96 N. H. 463, 467: "New Hampshire has followed the majority rule for a century without legislative restriction. Neither rule is entirely satisfactory to both society and the individual and both rules may be the subject of abuse. Unless the majority rule is subjected to legislative change, we shall continue to follow it unless a higher judiciary requires otherwise. The latter event 'must await the judicial miracle of the loaves and fishes, four becoming five.' *Rothensies* v. *Cassell*, 103 F.(2d) 834, 837."

As the matter now stands wire-tapping is not prohibited by any state statute and evidence obtained by wire-tapping is admissible in this state. Section 605 of the Communications Act of 1934 does not preclude the states from admitting such evidence, and under the longstanding rule in this state such evidence is not inadmissible even if it were obtained by means of an illegal search and seizure.

The reference in the reserved case to the justice and associate justice sitting "en panel" is a little oblique but it is assumed that it means that the justice and associate justice were sitting jointly. Whatever it means the State concedes that they have found no authority for it and we know of none. RSA 502:5 provides that where the justice of the municipal court is absent, disqualified or unable to attend, the special justice, commonly referred to as the associate justice, shall perform his duties. The municipal courts are established on the basis that only one justice shall sit in a case. The practice in the Amherst municipal court of the justice and special justice sitting together is without statutory authority and shall be discontinued in the future. Since the parties to this litigation requested a decision on the transferred questions we have treated them as transferred by the justice of the Amherst municipal court in accordance with the statute.

*Remanded for new trial.*

All concurred.