

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 31 2013

*Madsen, CJ*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Oct 31, 2013

*Ronald R. Carpenter*

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 87855-2 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| DAVID ALLEN WOOTEN, JR, | ) | |
| | ) | OCT 31 2013 |
| Petitioner. | ) | Filed _____ |
| | ) | |

GONZÁLEZ, J.—David Wooten was convicted of first degree malicious mischief for damaging a home he was purchasing on a real estate contract. Wooten claims he did not damage "property of another"—an element of malicious mischief—because he had exclusive possessory and proprietary interests in the property. He also argues the trial court abused its discretion by excluding closing argument about financing issues relating to the home.

We affirm. For purposes of malicious mischief, Wooten was not the exclusive owner of the property, and the trial court did not abuse its discretion by limiting Wooten's attorney's closing argument.

BACKGROUND

In May 2005, Wooten executed a purchase and sale agreement to buy a house from Dennis Kohl in the name of Wooten Primary Care (Primary), Wooten's family medical practice. In an addendum to the purchase and sale agreement, Primary and Kohl agreed to enter into an "option to Lease Purchase the Property." Ex. 1, at 9. Ultimately, Kohl and Primary entered into a real estate contract in November 2005, listing $225,000 as the purchase price. Bob Miller, Wooten's business partner, signed the contract on behalf of Primary.[1] Wooten did not sign the real estate contract. The contract also obligated the buyer to pay all taxes, keep the property in good repair, and bear the risk of loss for destruction of the property. No one recorded the purchase and sale agreement or the real estate contract.

Wooten and his family moved into the house in May 2005. Wooten claims he began remodeling the house in July 2007 to add a bedroom. When Wooten started work, however, he testified he found black mold in a bathroom and had to remove a large amount of sheetrock from the house. Wooten took a break from the project for the Christmas holiday.

Without telling Wooten, Kohl took out a mortgage on the property for $216,000 four or five months after entering into the purchase and sale agreement. Kohl testified he had informed Miller, Wooten's partner, that he was in the process of

---

[1] The State did not contend below that Primary had an ownership interest in the property separate from Wooten's interest. *State v. Wooten,* noted at 169 Wn. App. 1029, 2012 WL 3011730, at *1 n.2. We do not address that argument here.

getting the mortgage when he entered into the agreement with Primary. Kohl further testified that the Wootens had failed to pay taxes for the property, which had accumulated to $8,000, and that he had driven by the house and found it in disarray. According to Kohl, his attorney advised him to "flip" the property back to the bank because Kohl could not afford to pay the back taxes or repair the damage to the property. Kohl stopped paying on the mortgage in September 2007.

When the Wootens came home after the holidays, they found a default notice attached to the front gate. Wooten was surprised to find the notice because he had not used the property to secure any loans, nor had he defaulted on the monthly payments to Kohl. Wooten discovered that because of the mortgage Kohl had taken out, Wooten would have to pay double the sale price to avoid foreclosure. The Wootens moved out of the house in May 2008.

On May 24, 2008, Kohl went to the house and found it was badly damaged. Kohl called the sheriff's department, and a deputy arrived who had seen the house before. In January 2006, the deputy found the house in fairly good repair, with sheetrock and carpeting intact. On this visit, however, the deputy found a large amount of garbage outside the house. Inside, Kohl and the deputy found extensive damage. Carpet and tiling had been removed from the floor. Sheetrock was taken off most of the walls. Medical waste—including hypodermic needles and vials of blood—lay on the floor, as did trash, dog feces, and rotting food.

Wooten was charged with first degree malicious mischief. At trial, the State's construction expert testified it would cost at least $15,000 to bring the house back "to code" and more to restore the house to finished condition. Verbatim Report of Proceedings (VRP) (Apr. 15, 2010) at 11. The expert testified garbage removal would cost approximately $3,000, after an initial expense of $500 for a hazardous material assessment due to the medical waste. The State argued Wooten was not remodeling the house but that he had damaged it out of anger.

During closing argument, the court prohibited Wooten's attorney from arguing about the mortgage Kohl took out after entering the purchase and sale agreement with Primary. The court found the financing details were irrelevant to the issue of whether Wooten damaged the property.

Wooten was convicted and appealed. The Court of Appeals affirmed in a split decision. *State v. Wooten*, noted at 169 Wn. App. 1029, 2012 WL 3011730, at *8. Judge Armstrong dissented on the grounds the State had not proved that an entity other than Wooten had an ownership interest in the property or that the bank's security interest had been diminished. *Id.* at *9-10 (Armstrong, J., dissenting). We granted review.

ANALYSIS

To convict Wooten of first degree malicious mischief, the State must prove beyond a reasonable doubt that Wooten knowingly and maliciously caused physical damage to the property of another in an amount exceeding $1,500. Former RCW

4

9A.48.070 (1983).[2] Malice is defined as "an evil intent, wish, or design to vex, annoy, or injure another person." RCW 9A.04.110(12). Property of another "means property in which the actor possesses *anything less than exclusive ownership*." RCW 9A.48.010(1)(c) (emphasis added).[3] The meaning of a statute is a question of law, reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001)).

Wooten claims the State failed to show he damaged "property of another" because he had sole ownership of the real property. Suppl. Br. of Pet'r at 10-11. Wooten contends the seller (or the successor in interest to the seller) had only a security interest in the property, which, he contends, is insufficient to support the charge.

Wooten's property interest derived from his real estate contract. "A real estate contract is an agreement for the purchase and sale of real property in which legal title to the property is retained by the seller as security for payment of the purchase price." *Tomlinson v. Clarke*, 118 Wn.2d 498, 504, 825 P.2d 706 (1992) (citing RCW

---

[2] RCW 9A.48.070 now requires the State to prove a defendant caused more than $5,000 in physical damage, but Wooten agrees the events in this case took place before the higher statutory damage minimum went into effect. Suppl. Br. of Pet'r at 9 n.6.

[3] We respectfully disagree with the dissent's characterization of the State's burden when charging malicious mischief. The State bore the burden of proving Wooten damaged "the property of another." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 85.02, at 218 (3d ed. 2008). The dissent focuses on Kohl's ownership interest rather than on that of Wooten. But the State need not prove that Kohl owned the property damaged by Wooten, only that Wooten lacked exclusive ownership. *Id.*; *see also* RCW 9A.48.010. The State submitted sufficient evidence for the jury to so find. Further, our decision in this case is narrow. We merely hold where an executory contract conveys anything less than exclusive ownership pending the fulfillment of a condition precedent, the purchaser can be found guilty of malicious mischief for damaging the property if the condition has not yet been met.

61.30.010(1)). Legal title does not pass to the buyer until the purchase price is paid in full. *Id.* A real estate contract purchaser typically has the right to possess the land, grow and harvest crops, and sue for trespass. *Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 782, 567 P.2d 631 (1977) (collecting cases). But a real estate contract seller keeps title to the property until the contract terms are fulfilled and may require the purchaser to forfeit its property interest upon default. RCW 61.30.010(1), .100. Although limited, a seller maintains some ownership rights in property subject to an executory real estate contract.

The terms of this particular real estate contract show Wooten possessed "[some]thing less than exclusive ownership" under RCW 9A.48.010(1)(c). The buyer could not harvest commercial timber from the property without the consent of the seller. Nor could any of the rights in the contract, such as possession, be freely assigned. The buyer could not harvest commercial timber from the property without the consent of the seller. Nor could any of the rights in the contract, such as possession, be freely assigned. Both the seller and buyer had the right to appear in condemnation actions. If the buyer failed to meet any of its obligations—including paying taxes and keeping the property in good repair—the seller could require the

buyer to forfeit its interest in the property.[4] These are not characteristic of exclusive ownership.[5]

Moreover, this court and the legislature have broadly interpreted "property of another" in the context of malicious mischief. Before the legislature defined the term, we found a spouse may commit malicious mischief by damaging community property. *State v. Coria*, 146 Wn.2d 631, 636, 639, 48 P.3d 980 (2002). The same year we decided *Coria*, and consistent with our opinion, the legislature adopted the current definition of "property of another" as "property in which the actor possesses anything less than exclusive ownership." LAWS OF 2002, ch. 32, § 1 (codified at RCW 9A.48.010(1)(c)).

Wooten also claims the trial court improperly prevented his attorney from arguing in closing about the mortgage Kohl took out after entering into the purchase and sale agreement. Suppl. Br. of Pet'r at 22-23. The trial court found the financing details were irrelevant to the malicious mischief charge. We review the trial court's decision to limit closing argument for abuse of discretion. *State v. Perez-Cervantes*,

---

[4] Here, although Wooten was current on monthly payments to Kohl when Wooten received the notice from the bank, Kohl testified that Wooten had defaulted on the obligations to pay taxes and to maintain the house and yard.

[5] When Wooten contracted with Kohl, he started on the path to exclusive ownership of the property. Kohl's subsequent mortgage and default washed away that path as well as Wooten's existing interest. Though Wooten could have protected his interest by recording the purchase and sale agreement, the court is not without sympathy for Wooten and not without reproach for Kohl. We cannot, however, condone Wooten's resort to self-help remedies. By leaving medical waste, dog feces, rotting food, garbage, and the house in significant disrepair, Wooten sought to diminish the value of Kohl's (or the bank's) ownership interest in the house as his own was being extinguished. All criminal liability stems from these malicious actions, not from ongoing home improvement projects or repairs.

141 Wn.2d 468, 475, 6 P.3d 1160 (2000). A court abuses its discretion "only if no reasonable person would take the view adopted by the trial court." *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979) (citing *State v. Blight*, 89 Wn.2d 38, 41, 569 P.2d 1129 (1977)).

The trial court did not abuse its discretion by preventing Wooten's attorney from arguing about Kohl's mortgage. During his closing argument, Wooten's attorney began telling the jury that several months after selling the property to Wooten, "[W]hat did Mr. Kohl do[?] He went to some bank, and we don't know the name of the bank, but he went to some bank and he took out a loan." VRP (Apr. 15, 2010) at 81. The court believed Wooten's attorney was trying to confuse the jury as to who was responsible. Indeed, Kohl's mortgage is irrelevant to the question of whether Wooten was the exclusive owner of the property. Wooten did not make the final payment or have full ownership of the property. Kohl's mortgage did not affect Wooten's status as a nonexclusive owner.[6]

## CONCLUSION

We hold that for purposes of malicious mischief, the purchaser of land under an executory real estate contract is not an exclusive owner. The State provided sufficient evidence that Wooten damaged the property of another. We affirm.

---

[6] We note in passing that statutes defining "malicious mischief" do not require damage to the property of an *intended* victim. It was sufficient for the State to prove Wooten damaged property of another with the intent to vex, annoy, or injure *someone*. *See* RCW 9A.48.070; RCW 9A.04.110(12); *see also State v. Wilson*, 125 Wn.2d 212, 219, 883 P.2d 320 (1994) (once mens rea is established, any unintended victims are assaulted if they fall within the terms and conditions of the statute).

*State v. Wooten*, No. 87855-2

_____
González, J.

WE CONCUR:

_____
Madsen, C.J.

_____

_____
Fairhurst, J.

_____

_____
Wiggins, J.

_____

9

No. 87855-2

OWENS, J. (dissenting) -- David Wooten purchased a house from Dennis Kohl through a real estate contract in May 2005. Wooten and his family began living in the house in 2007 and started remodeling to add a bedroom and remove black mold. Wooten kept current on his payments throughout this period. But unbeknownst to Wooten, Kohl had improperly taken out a second mortgage on the house after the sale. When the Wooten family returned to the house after the holidays that year, they found a default notice on the front gate as a result of Kohl's failure to make payments on the second mortgage. Rather than pay double the sale price to keep the house, Wooten allowed the house to undergo foreclosure and he and his family moved out.

A few months later Kohl visited the house and discovered that it was badly damaged. Wooten was subsequently prosecuted for malicious mischief. I believe this

prosecution was erroneous. Former RCW 9A.48.070(1)(a) (1983) defines "malicious mischief" as "knowingly and maliciously" causing "physical damage to the property of another in an amount exceeding [$1,500]." Wooten's actions do not fit this definition. The house was not the "property of another" because Kohl had sold it to Wooten. While Kohl may have retained a security interest in the house, a security interest cannot be physically damaged. By holding that it can be, the majority has adopted an unworkable definition of "physical damage" that will subject Washington homeowners to confusion and potential criminal sanction for standard home repair projects.

Respectfully, I dissent.

## ANALYSIS

A person commits malicious mischief when he or she "knowingly and maliciously . . . [c]auses physical damage to the property of another in an amount exceeding [$1,500]." *Id.* I argue that the majority has misapplied the statute to the facts at hand and, consequently, brought harm and confusion to Washington homeowners with an unworkable standard.

*I.     The Majority Misapplied the Statute to This Case*

In applying the malicious mischief statute to these facts, the two main concerns are whether the house Wooten damaged—and lived in at the time—was the "property

2

of another" and whether Kohl's interest in the property was "physically damaged."

The majority is incorrect about both.

    *A.    The House Was Not the Property of Another for Malicious Mischief*
           *Purposes*

The Revised Code of Washington defines "'[p]roperty of another'" as that "in

which the actor possesses anything less than exclusive ownership." RCW 9A.48.010.

The legislature's choice of the word "ownership," rather than the broader term

"interest," reveals a desire to define malicious mischief narrowly. This court has

listed the "chief incidents" of ownership as the right to possess, use, enjoy, and sell

property. *Wasser & Winters Co. v. Jefferson County*, 84 Wn.2d 597, 599, 528 P.2d

471 (1974).

Kohl had no such ownership interests. He did not retain rights essential to

ownership such as "'the right to possession of the land'" or "'the right to control the

land.'" *Tomlinson v. Clarke*, 118 Wn.2d 498, 507, 825 P.2d 706 (1992) (quoting

*Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 782, 567 P.2d 631 (1977)). Nor did he

even maintain the right to manage or enjoy the property. *Wasser*, 84 Wn.2d at 599. If

Kohl wanted to move into the house and enjoy it as if it were his own, he could not

legally do so. He could not dictate to Wooten how to combat the black mold found in

the bathroom nor assert any other physical control over the property. He certainly

could not sell the property out from under its current occupant and give a different

buyer the right to use and possess the house. In sum, as long as Wooten continued to make payments, Kohl's interest in the property could not accurately be described as one of "ownership."

Instead of viewing Kohl's interest as ownership, Washington treats the seller's interest in a real estate contract as a lien/mortgage-type security interest in real property. *Tomlinson*, 118 Wn.2d at 509. As a vendee, Wooten "possesses the beneficial interest and real ownership in the land," while the vendor, Kohl, "retains only a security under the contract which is looked upon as personal property rather than as an interest in the land." *Comm. of Protesting Citizens v. Val Vue Sewer Dist.*, 14 Wn. App. 838, 842, 545 P.2d 42 (1976); *see In re Estate of Eilermann*, 179 Wash. 15, 18, 35 P.2d 763 (1934) (vendor's interest is personal property, not realty, for purposes of probate administration); *Meltzer v. Wendell-West*, 7 Wn. App. 90, 94-95, 497 P.2d 1348 (1972) (vendor's interest is personal property, not realty, under community property law).

Washington's perception of real estate purchasers like Wooten as property owners, and sellers like Kohl as holders of a security interest, manifests in other areas of the law as well. Purchasers are treated as real property owners for purposes of attachment, the judgment lien statute, *Cascade Sec. Bank*, 88 Wn.2d at 782, and for determining superior interest under the bona fide purchaser doctrine, *Tomlinson*, 118 Wn.2d at 503. This treatment also extends to the remedies available to the parties.

4

"The remedies provided to the seller in the case of breach or nonperformance are those of a secured creditor." *In re McDaniel*, 89 B.R. 861, 869 (Bankr. E.D. Wash. 1988). These remedies consist mainly of foreclosure under U.C.C. § 9-610 or obtaining a judgment under U.C.C. § 9-601(a)(1) to satisfy the debt.

The contract between Wooten and Kohl gave Wooten all of the requisites for ownership mentioned above. It did not give Kohl these rights, one of which is the right to mortgage the property, *Tomlinson*, 118 Wn.2d at 507, but Kohl did so anyway and started himself and Wooten down the path that led to this court and Wooten's conviction. Instead, it should have been Wooten's actions that determined the future rights of both parties. Wooten's timely payments dictated the continuance of his ownership of the house, to the exclusion of all others. The contract shows that if Wooten made all the payments, there would be nothing Kohl could do to prevent him from attaining formal title to the house. Wooten's exclusive physical control over the house and its fate made him the sole owner of the property.

The majority relies on *Tomlinson* to rebut this proposition. *See* majority at 5. Legal title in a real estate transaction, as the majority points out, does not pass to the buyer until the purchase price is paid in full. *Tomlinson*, 118 Wn.2d at 504. This may be, but legal title and ownership are not the same thing. "[B]are legal title" can be separated from an ownership interest, even in the context of intangible property like stock shares in a company. *O'Steen v. Estate of Wineberg*, 30 Wn. App. 923, 932-33,

640 P.2d 28 (1982). Thus, legal title is not required to maintain an ownership interest in property; it is merely evidence of such an interest. In this case, Kohl's title points to a security interest. In *Tomlinson*, this court also treated legal title as distinct from an ownership interest, explaining that "[t]here is no valid reason to distinguish between those cases in which legal title is conveyed to secure the payment of a debt and those cases in which legal title is retained to secure the payment of a debt." 118 Wn.2d at 509-10. Regardless of whether the formal legal title passes at the beginning or the end of the transaction, the buyer obtains an exclusive ownership interest in the property, while the seller's interest is treated as a lien/mortgage-type security interest. *Id.* at 509. Consequently, *Tomlinson* directly contradicts the argument made by the majority that exclusive ownership requires legal title.

Despite this precedent to the contrary, the majority still insists that sellers in real estate contracts maintain ownership of the properties after they have been sold. In support of this proposition, they cite this court's decision in *State v. Coria*, 146 Wn.2d 631, 48 P.3d 980 (2002), where the defendant damaged community property owned concurrently with his wife. Despite this ownership interest in the damaged property, he was still convicted. *Id.* at 633, 643. But *Coria* established only that community property could be considered "property of another." *Id.* at 636. Both Mr. and Mrs. Coria had a possessory, ownership-type interest in the items damaged. Either could exert exclusive physical control over the jointly owned property. This

type of exclusive, possessory interest is different from Kohl's security interest, which essentially consists of the right to collect payments from Wooten. Because *Coria* addresses only the former, it has no application to cases involving security interests like the one at issue here.

The State admitted at oral argument that if Kohl's interest in the property were only a security interest, it was not proved to be damaged. Wash. Supreme Court oral argument, *State v. Wooten*, No. 87855-2 (May 21, 2013), at 20 min., 0 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. As I have shown above, Kohl had no more than a security interest in the property. Wooten was the exclusive owner of the house, thus he did not damage the "property of another" and cannot be found guilty of malicious mischief.

B.     *Wooten Did Not Physically Damage Kohl's Interest*

In addition to erring on the question of whether the house was "property of another," the majority errs on the question of whether Wooten physically damaged Kohl's interest because (1) a security interest cannot be physically damaged and (2) Kohl's interest was not damaged at all.

*1. Kohl's Interest Cannot Be Physically Damaged*

First, even if Kohl's interest were defined as ownership, Wooten's actions do not meet the second requirement for a malicious mischief prosecution, that the interest be physically damaged. Former RCW 9A.48.100(1) (1984) lists two definitions of

7

"'[p]hysical damage'": the first is its "ordinary meaning" and the second is, among

other data-related definitions that are not relevant in this case, "any diminution in the

value of any property as the consequence of an act." The ordinary meaning of the

phrase "physical damage" requires the thing being damaged to be physical itself. We

have previously held that physical damage requires a physical invasion of the property

that either destroys it or injures it so that it does not function properly. *State v.*

*Nordskog*, 76 Wash. 472, 474, 136 P. 694 (1913). For example, in *Nordskog* the

defendant's conviction for willfully and maliciously damaging property by attaching a

wiretap to a telephone call box was overturned because his actions did not involve a

"physical invasion" of the property such that the property was damaged. *Id.* A

similar standard was used in a malicious mischief context in *State v. Gardner*, 104

Wn. App. 541, 16 P.3d 699 (2001). There the defendant keyed the microphone on a

police radio, causing disruptive clicking sounds on the officers' radio frequency. *Id.*

at 543. This was considered physical damage because it interrupted and interfered

with the function of regular transmissions in a harmful way. *Id.* at 544. Despite this,

the majority claims the second definition of malicious mischief (any diminution in the

value of any property as the consequence of an act) allows nonphysical things to be

physically damaged. This interpretation, however, is not only contrary to *Nordskog*

and *Gardner* but illogical as well. It would not make sense to claim that one's right to

free speech was physically damaged by censorship or that the stock market was

physically damaged by a sluggish economy. Yet both of these scenarios entail a diminution in the value of interests that could accurately be described as property.

A more reasonable interpretation of the second definition of "physical damage" is that it was meant to cover situations where an actor reduced the value of physical property in a manner that could not be described as ordinary "physical damage." For instance, if a graffiti artist spray painted an image onto a building, the building could still function properly, support the weight of its occupants, and endure the elements as before (perhaps even better now that it has an extra layer of paint). The walls were not smashed; the windows were not broken. Nonetheless, the owner has suffered a loss. If the owner desires to sell the building, she or he must either pay to have the image painted over or accept lower than market price. Or, imagine a car collector with a brand new Ferrari that has never been driven. Without the owner's permission, a friend takes the car and, with malicious intent, drives it to the store and back. Despite the still pristine condition of the car and the fact that no physical damage has been done, the owner has suffered a loss: the Ferrari is not worth as much as it was when the odometer read "zero." In both instances, the items were physically altered but not physically damaged. Consequently these situations would not have been considered malicious mischief under the ordinary meaning of "physical damage," but they would be under the second, expansive definition. The logical purpose of the expansive definition was likely to cover possible loopholes like these in the ordinary

9

meaning definition. This reading of the statute, unlike that adopted by the majority, is logical, workable, and comports with the statute's plain meaning. I would adopt the more logical interpretation, that in order for property to be physically damaged under RCW 9A.48.100(1), the property itself must be physical.

In the Court of Appeals opinion in this case, the majority cites *State v. Newcomb*, 160 Wn. App. 184, 246 P.3d 1286, *review denied*, 172 Wn.2d 1005 (2011), as evidence that Washington has broadly defined "physical damage" in the malicious mischief context. *State v. Wooten*, noted at 169 Wn. App. 1029, 2012 WL 3011730, at *3, *review granted*, 176 Wn.2d 1001 (2013). There the defendant dug up and obstructed the gravel path constituting his neighbor's ingress-egress easement, causing $7,000 worth of damage and making the easement impassable. *Newcomb*, 160 Wn. App. at 187-88. But there the value of the property interest in the easement was considered physically damaged because it could no longer be used. The value of an easement interest is inseparable from the ability to physically use it, while the value of Kohl's security interest in the house is different from the value of the house itself. Consequently this reliance on *Newcomb* is misplaced. *Newcomb* does not demonstrate that a security interest can be physically damaged, only that, because of their unique physicality, easements can be. *See id.* at 190. Similarly, other cases cited by the Court of Appeals have no application to this case because they involve damage to physical property, not a security interest. *State v. VanValkenburgh*, 70 Wn. App.

812, 814, 856 P.2d 407 (1993) (noting that the defendant was convicted of malicious

mischief for breaking windows); *State v. Schaffer*, 120 Wn.2d 616, 618-19, 845 P.2d

281 (1993) (noting that the defendant was convicted of malicious mischief for

slashing tires). Thus, the Court of Appeals' legal authority does not support its

proposition that Washington has defined "physical damage" in a way that could be

applied to nonphysical property. *See Wooten*, 2012 WL 3011730, at *3.

2. *Kohl's Interest Was Not Damaged at All*

Second, assuming, for the sake of argument, that the Revised Code of

Washington provides that nonphysical items can be physically damaged, Wooten

would still not be guilty of a felony because Kohl's interest in the house was not

damaged by Wooten's actions. Indeed, the State admitted at oral argument that if

Kohl's interest in the property were only a security interest, it was not proved to be

damaged. That is because the value of a security interest is not necessarily the same

as the value of the secured property. *Bennett v. Maloney*, 63 Wn. App. 180, 185-86,

817 P.2d 868 (1991). So when Wooten damaged the house, he did not cause de facto

damage to Kohl's interest in the house. Kohl's interest consists only of the ability to

collect payments from Wooten and, upon default, collect the amount he is owed

(through repossessing the house under, selling it and garnishing the proceeds under,

obtaining a judgment for the amount owed under, or other collection methods set forth

in the Uniform Commercial Code). U.C.C. §§ 9-609, 9-610, 9-601(a)(1). The entity

that now possesses Kohl's interest still has the ability to collect the entirety of what it is owed by selling the house. The second mortgage taken out by Kohl was for $216,000, which is the value of the security interest. When Kohl sold the house to Wooten it was worth $295,000. The current owner of the house, then, could sell it for $276,000 ($295,000 less the roughly $19,000 required to bring the house up to code), which is still $60,000 more than the security interest is worth. That means the security interest has lost no value as a result of Wooten's actions. Because the security interest lost no value, Wooten did not cause damage to it and thus cannot be convicted of malicious mischief. I do not understand how Wooten can be convicted of a felony for causing no financial harm.

There is further evidence, outside of RCW 9A.48.100(1), that the legislature did not intend for the diminution of a security interest to be punished in the context of malicious mischief: a different statute addresses such conduct. RCW 61.12.030 makes damaging securities or mortgage property a misdemeanor. The difference between the misdemeanor statute and the felony statute is not just that the latter requires malice. If that were the case, the felony statute would be explicit about the fact that it punishes damage done to lien-type interests as well as physical property. It is not. The felony statute, former RCW 9A.48.070(1)(a), mentions only physical damage to property, while the misdemeanor statute, RCW 61.12.030, mentions damage to security interests as well. If the legislature provides a specific definition in

12

one statute and a general definition in another, we must assume that the legislature

meant to apply the specific statute only. *State v. Smeltzer*, 86 Wn. App. 818, 820, 939

P.2d 1235 (1997). Thus, in addition to malice, an actor must damage a physical

property interest in order to commit malicious mischief. Damaging a security interest

is punishable in the criminal context only as a misdemeanor. In short, if the

legislators who drafted these provisions had meant for causing $1,500 in damage to a

security interest to be a felony, they would have said so.

Punishing Wooten's conduct with a malicious mischief prosecution also goes

against established concepts of malicious mischief. A primary distinction between

malicious mischief and theft is that malicious mischief involves property that cannot

be redeemed. *State v. Webb*, 64 Wn. App. 480, 490, 824 P.2d 1257 (1992). It was not

meant to apply to cases like this one where the property (the house) and the property

interest (the security) can still be redeemed by selling the house. Simply put, this case

does not belong in the "felony" category. It belongs as either a misdemeanor under

RCW 61.12.030 or in a civil suit as a tort.

II.     *The Majority's Unworkable Standard Will Shrink and Obscure the Rights of
        Washington Homeowners*

Placing Wooten's actions in the context of felony malicious mischief, as the

majority has done, will have considerable negative consequences for Washington

homeowners by shrinking their property rights and causing confusion as to how far

those rights extend. There is no logic or reason in the possibility that they could be prosecuted for malicious mischief for doing something as ordinary as making alterations and repairs to a house they bought but have not yet received title to. They will not be able to make necessary repairs to rid their house of nuisances such as black mold without fear of criminal sanction. Worse still, they will not be protected from this prosecution even if, like Wooten, the sole reason that the "damage" caused by the alterations was discovered was a dubious second mortgage taken out on the house by the seller. Homeowners understand that the logical result of buying a home is exclusive ownership over the property, even before the mortgage is paid in full.

As long as a buyer abides by the contract and makes timely payments, the property will become his or hers. As the majority points out, if the buyer fails to make these payments, the seller may compel the buyer to forfeit the latter's interest in the property. *See* majority at 6. But the possibility of future loss does not preclude a buyer who has been making timely payments from being the exclusive owner of the house. There are countless examples of property that could be taken from owners: by the government if misused or by creditors to satisfy payment. But this possibility does not prevent the original owner from having exclusive ownership over his property.

For instance, if a vehicle is used as an accessory to a crime, the State may confiscate it. The prospect of forfeiture, however, does not mean all car owners

14

automatically share ownership rights in their cars with the government. Similarly, taking out a loan raises the possibility of default and subsequent seizure of the borrower's assets to satisfy the debt. Still, maintaining a debt, the default of which could cause a creditor to take possession of the borrower's property, does not divulge the borrower of exclusive possession of that property, despite the very real prospect of separation from it. Exclusive ownership does not require an absolute certainty that the buyer will sustain ownership of the property no matter what, only that her continued ability to lawfully exercise that ownership is within her control. Homeowners across the state of Washington who thought that they had such control over their houses have been rebuffed by the majority's decision. Today's ruling will cause significant confusion for average home buyers and owners struggling to understand what conduct will and will not give them exclusive ownership of their homes.

Another negative consequence of today's decision is that the majority's interpretation of RCW 9A.48.010 has the potential to criminalize any breach of contract done with malice, even where there is no actual damage to another party's interest. If a person takes out a large loan from a bank, and then proceeds to purposefully gamble away all of his or her money, the resulting decrease in the value of the bank's right to receive payments (because they are now so difficult to collect) will now be considered malicious mischief. This example fits the new definition of physical damage adopted by the majority: a diminution in the value of a security

15

interest. Now all that stands between this unfortunate gambler and a malicious

mischief prosecution is malice, which is not difficult to attribute to an actor in breach

of his contractual obligations. "'Malice'" is defined as "an evil intent, wish, or design

to vex, annoy, or injure another person." RCW 9A.04.110(12). Malice may even be

"inferred from an act done in willful disregard of the rights of another, or an act

wrongfully done without just cause or excuse, or an act or omission of duty betraying

a willful disregard of social duty." *Id.* Thus, any breach of contract done with "an

evil wish" to "annoy another person," or even out of a "willful disregard of a social

duty," that results in a $1,500 reduction in value of any type of interest, can hereafter

be considered malicious mischief. The majority's construction of malicious mischief

stretches its definition too far. Defendants who caused infractions to nonphysical

interests are now subject to felony charges, instead of having to defend themselves in

civil court, which is where cases such as this one belong.

## CONCLUSION

The majority's opinion brings about the perverse result that Wooten would

likely win a civil case in tort against the holder of the security interest because there

was no actual damage to that entity's interest, yet he will lose this criminal case for

malicious mischief for the same actions. Today's ruling is incompatible with the plain

meaning of "physical damage," contrary to the intent of the legislature that drafted the

malicious mischief statute and harmful to Washington homeowners. For these

16

reasons, I cannot agree. I would reverse the Court of Appeals ruling and hold that a security interest cannot be physically damaged for purposes of the malicious mischief statute.

I respectfully dissent.