FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 SEP -4  AM 9: 30



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74859-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JERRY ALLEN FLUKER, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant, | ) | |
| | ) | |
| MARQUE DEANDRE FLUKER, | ) | |
| | ) | |
| Defendant. | ) | FILED: September 4, 2018 |

SCHINDLER, J. — Jerry Allen Fluker appeals the jury conviction of felony rendering criminal assistance in the first degree. Fluker contends insufficient evidence supports the conviction and the court erred by sustaining an objection during closing argument. We affirm.

## FACTS

The facts are set forth in the linked case, State v. Mar'Que Fluker, No. 75060-7-I (Wash. Ct. App. Sept. 4, 2018), and will be repeated only as necessary.

On August 12, 2015, LeMaun Lancaster punched Jerry Allen Fluker in the face. Jerry's brother Mar'Que Fluker shot Lancaster 8 to 10 times.[1] Jerry told Mar'Que he "wasn't going to leave without him." Mar'Que got in the car and Jerry drove away. Mar'Que called 911. Mar'Que told the 911 operator that he would meet the police at a nearby Safeway parking lot. When King County Sheriff Detective Aaron Thompson drove to two nearby Safeway parking lots, Mar'Que was not there.

Surveillance videos show Jerry and Mar'Que drive away after the shooting in a silver 2001 Chevrolet Impala. The Impala was registered to Jerry.

The State charged Mar'Que with intentional murder in the second degree of Lancaster while armed with a firearm. The State charged Jerry with felony rendering criminal assistance in the first degree. Mar'Que asserted self-defense and defense of others. Jerry pleaded not guilty.

During the two-week jury trial, the State called more than 20 witnesses. Mar'Que and Jerry testified. The court admitted into evidence several exhibits, including an exhibit with the surveillance videos. The State played the surveillance videos for the jury.

The videos show Jerry pushed Lancaster in the chest before Lancaster punched Jerry in the face. Mar'Que immediately pulls out a gun and shoots Lancaster. Lancaster doubles over, covers his stomach, twists to the right away from Mar'Que, and falls to the ground. Jerry watches Mar'Que shoot Lancaster,

---

[1] For purposes of clarity, we refer to Jerry Fluker and Mar'Que Fluker by their first names.

picks his hat up off the ground, walks to his car—a silver 2001 Chevrolet Impala, and gets in the driver's seat. Mar'Que paces back and forth before getting in the passenger seat. As the car backs out of a parking space, Mar'Que jumps out of the car. The car stops. Mar'Que talks to someone in the car and then gets back into the car.[2] Jerry drives away.

The jury found Mar'Que guilty of the lesser included crime of manslaughter in the first degree while armed with a firearm. The jury found Jerry guilty of felony rendering criminal assistance in the first degree. The court sentenced Jerry to nine months with credit for time served.

ANALYSIS

## Sufficiency of the Evidence

Jerry contends the evidence does not support the jury conviction for rendering criminal assistance in the first degree. Jerry contends RCW 9A.76.050 requires the State to prove that he provided transportation as a "means of avoiding discovery or apprehension." RCW 9A.76.050(3). Jerry argues insufficient evidence supports the conviction because he "simply drove his brother home."

In determining whether sufficient evidence supports the conviction, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

---

[2] Jerry and Mar'Que's nephew is also in the car.

When challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence, and all reasonable inferences must be drawn in favor of the State and interpreted strongly against the defendant. Salinas, 119 Wn.2d at 201. We give deference to the finder of fact in resolving conflicting testimony and weighing the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Circumstantial and direct evidence are accorded equal weight. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

> RCW 9A.76.050 states a person "renders criminal assistance" if
>
> with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows committed a crime . . . , he or she
>
> . . . .
>
> (3) Provides such person with money, transportation, disguise, or other means of avoiding discovery or apprehension.

The use of a comma before the qualifying phrase "or other means of avoiding discovery or apprehension" applies to all antecedents. RCW 9A.76.050(3); State v. Bunker, 169 Wn.2d 571, 578, 238 P.3d 487 (2010).

Jury instruction 19 defines the crime of "rendering criminal assistance in the first degree" as follows:

> A person commits the crime of Rendering Criminal Assistance in the First Degree when he or she renders criminal assistance to a person who he or she knows has committed Murder in the Second [D]egree or Assault in the First Degree.

Jury instruction 20 states a person "renders criminal assistance" if

> with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows has committed

a crime, he or she provides such person with transportation, disguise, or other means of avoiding discovery or apprehension.[3]

Viewing the evidence in the light most favorable to the State, the jury could find beyond a reasonable doubt that Jerry provided transportation with the intent to prevent, hinder, or delay apprehension.

The undisputed evidence shows Jerry knew Mar'Que shot Lancaster several times. Mar'Que testified that after he shot Lancaster, he "wanted to stay" but "they kept telling me to leave." Mar'Que testified that when Jerry was "trying to back up [the car], . . . I just moved out the door and I kept telling him to go," but Jerry told Mar'Que that he was "not leaving without me." Mar'Que "hopped in the car" and called 911. Mar'Que testified he told the 911 operator that "people were shooting at [him]" and "the person [he] shot had a gun." But Mar'Que admitted at trial, "That wasn't true." Mar'Que admitted no one was shooting at him and "I knew [Lancaster] didn't have a gun on him." Mar'Que testified he told the 911 operator that he "was going to Safeway." Mar'Que testified that Jerry drove to the Safeway parking lot and they "waited there for a few minutes." But then Jerry "drove [him] away from the Safeway." Mar'Que testified a friend picked him up from his mother's house. His friend drove Mar'Que "[t]o Burien, where [his] car was," and then Mar'Que drove to "North Seattle to a friend's house."

---

[3] The to-convict jury instruction states, in pertinent part:

> To convict the defendant of the crime of Rendering Criminal Assistance in the First degree, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about August 12, 2015, defendant Jerry Allen Fluker rendered criminal assistance to a person;
> (2) That the person had committed Murder in the Second Degree or Assault in the First Degree;
> (3) That the defendant knew that the person had committed Murder in the Second Degree or Assault in the First Degree.

5

Jerry testified that he owned the 2001 Chevrolet Impala. Jerry said that on August 12, he "stopped by the Ezell's [Famous Chicken restaurant] in Skyway" with Mar'Que. When he came out of Ezell's, he "felt like something was going to start happening." Jerry testified, "I just remember after being punched and [Lancaster] saying, shoot. My brother was like, I'm not playing, and he started firing." Jerry said he saw Lancaster "hit the ground . . . and that's when I just — I picked up my hat, and I walked to the car."

Jerry testified he "wasn't going to abandon [Mar'Que] and leave him there." Jerry said Mar'Que got in the car and "then he got out" because he "wanted to stay." Jerry told Mar'Que, "I'm not leaving without you." Mar'Que got back in the car and they "headed towards South Seattle" but Mar'Que "wanted to go to the Safeway and wait for the police." Jerry knew the police were "going to be looking for somebody" and he "didn't want to do anything that would hurt" Mar'Que.

Jerry said they left Safeway and "headed toward my mom's house in Renton." Mar'Que "called somebody to come pick [him] up from there." When they got to the apartment, "somebody was already there waiting to pick [Mar'Que] up." Jerry parked his car at his mother's apartment complex, called his girlfriend, and "told her to come pick me up."

Sufficient evidence supports the jury finding Jerry guilty of rendering criminal assistance in the first degree.

Closing Argument

Jerry contends the court erred by sustaining an objection to the defense argument on the burden of proof

6

"We review the trial court's decision to limit closing argument for abuse of discretion." State v. Wooten, 178 Wn.2d 890, 897, 312 P.3d 41 (2013) (citing State v. Perez-Cervantes, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000)). "A court abuses its discretion 'only if no reasonable person would take the view adopted by the trial court.' " Wooten, 178 Wn.2d at 897 (quoting State v. Huelett, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979)). While counsel has considerable latitude in closing argument, argument "must be restricted to the facts in evidence and the applicable law, lest the jury be confused or misled." Perez-Cervantes, 141 Wn.2d at 474.

The court instructed the jury on the burden of proof. The jury instructions state that Jerry "entered a plea of not guilty" and that the plea "puts in issue every element" of the crime charged. Jury instruction 3 states that the State has the "burden of proving each element of each crime beyond a reasonable doubt." Jury instruction 3 defines "reasonable doubt" as follows:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

During closing argument, defense counsel argued, in pertinent part:

> [B]eyond a reasonable doubt is a very high standard, a standard that is the highest of all standards we use in the legal system. If you think about standards of proof, kind of starting at the lowest level possible, you would have reasonable suspicion, and that's something an officer would use to look at a scenario to decide whether or not they have a basis to stop, to talk, to investigate a case, whether they have something to submit to the prosecutor for charges. Higher than that, you have probable cause. Probable

cause is where a judge would find that there are sufficient allegations to let a case — .

The State objected. The court sustained the objection. The court ruled, "The jury has the law, you should focus on the Court's instructions."

The court did not abuse its discretion by sustaining the objection to the argument. While defense counsel must be afforded " 'the utmost freedom in the argument of the case,' " closing argument is restricted to "the applicable law, lest the jury be confused or misled." Perez-Cervantes, 141 Wn.2d at 474 (quoting Sears v. Seattle Consol. St. Ry., 6 Wash. 227, 232-33, 33 P. 389, 33 P. 1081 (1893)).

Appellate Costs

The State requests appellate costs on appeal. Under RAP 15.2(f), if a defendant has been found indigent, the presumption of indigency continues throughout review. State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 (2016). RAP 15.2(f) states:

> A party and counsel for the party who has been granted an order of indigency must bring to the attention of the appellate court any significant improvement during review in the financial condition of the party. The trial court will give a party the benefits of an order of indigency throughout the review unless the appellate court finds the party's financial condition has improved to the extent that the party is no longer indigent.

Under RAP 14.2, the State may file a motion for costs with the commissioner if financial circumstances have significantly improved since the finding of indigency. State v. St. Clare, 198 Wn. App. 371, 382, 393 P.3d 836 (2017).

We affirm the jury conviction of felony rendering criminal assistance in the first degree.

Schindler, J.

WE CONCUR:

Trickey, J.

Becker, J.

9